## AMALGAMATED UTILITY WORKERS (C. I. O.) *v.* CONSOLIDATED EDISON CO. OF NEW YORK ET AL.

No. 342.    Argued January 31, 1940.—Decided February 26, 1940.

*Mr. Louis B. Boudin* for petitioner.

*Mr. William L. Ransom* for Consolidated Edison Co. et al.; and *Mr. Isaac Lobe Straus,* with whom *Mr. Claude A. Hope* was on the brief, for International Brotherhood of Electrical Workers et al., respondents.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The National Labor Relations Board ordered the Consolidated Edison Company of New York and its affiliated companies to desist from certain labor practices

found to be unfair and to take certain affirmative action. The Circuit Court of Appeals granted the Board's petition for enforcement of the order, and its decree, as modified, was affirmed by this Court. 305 U. S. 197. Petitioner, Amalgamated Utility Workers, brought the present proceeding before the Circuit Court of Appeals to have the Consolidated Edison Company and its affiliated companies adjudged in contempt for failure to comply with certain requirements of the decree.

The Board, in response to the motion, asserted its willingness to participate in an investigation to ascertain whether acts in violation of the decree had been committed and suggested that the court direct such investigation as might be deemed appropriate.

The Court of Appeals denied the application upon the ground that petitioner had "no standing to press a charge of civil contempt, if contempt has been committed." The court held that under the National Labor Relations Act "the Board is the proper party to apply to the court for an order of enforcement and to present to the court charges that the court's order has not been obeyed." 106 F. 2d 991. In view of the importance of the question in relation to the proper administration of the National Labor Relations Act, we granted certiorari. 308 U. S. 541.

Petitioner contends that the National Labor Relations Act[1] "creates private rights"; that the Act recognizes the rights of labor organizations; and that it gives the parties upon whom these rights are conferred status in the courts for their vindication. In support of its alleged standing, petitioner urges that under its former name (United Electrical and Radio Workers of America) it filed with the National Labor Relations Board charges against the respondent companies, and that it was upon

[1] 49 Stat. 449, 29 U. S. C. 151, et seq.

these charges that the Board issued its complaint and held the hearing which resulted in the order in question. Also, that petitioner was permitted to intervene in the proceedings before the Circuit Court of Appeals where the companies had moved to set aside the Board's order and the Board had moved to enforce it; and that the petitioner had also been heard in this Court in the certiorari proceedings for review of the decree of enforcement.

Petitioner invokes the statement in § 1 of the Act of "findings and policy," with respect to the effect of the denial by employers of the right of employees to organize and to bargain collectively, and in particular the provision of § 7 [2] that

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

Neither this provision, nor any other provision of the Act, can properly be said to have "created" the right of self-organization or of collective bargaining through representatives of the employees' own choosing. In *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.*, 301 U. S. 1, 33, 34, we observed that this right is a fundamental one; that employees "have as clear a right to organize and select their representatives for lawful purposes" as the employer has "to organize its business and select its own officers and agents"; that discrimination and coercion "to prevent the free exercise of the right of employees to self-organization and representation" was a proper subject for condemnation by competent legislative authority. We noted that "long ago"

---

[2] 29 U. S. C. 157.

we had stated the reason for labor organizations,—that through united action employees might have "opportunity to deal on an equality with their employer," referring to what we had said in *American Steel Foundries* v. *Tri-City Central Council*, 257 U. S. 184, 209. And in recognition of this right, we concluded that Congress could safeguard it in the interest of interstate commerce and seek to make appropriate collective action "an instrument of peace rather than of strife." To that end Congress enacted the National Labor Relations Act.

To attain its object Congress created a particular agency, the National Labor Relations Board, and established a special procedure. The aim, character and scope of that special procedure are determinative of the question now before us. Within the range of its constitutional power, Congress was entitled to determine what remedy it would provide, the way that remedy should be sought, the extent to which it should be afforded, and the means by which it should be made effective.

Congress declared that certain labor practices should be unfair, but it prescribed a particular method by which such practices should be ascertained and prevented. By the express terms of the Act, the Board was made the exclusive agency for that purpose. Section 10 (a) provides:[3]

"The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise."

The Act then sets forth a definite and restricted course of procedure. A charge of an unfair labor practice may

---

[3] 29 U. S. C. 160 (a).

be presented to the Board, but the person or group making the charges does not become the actor in the proceeding. It is the Board, and the Board alone or its designated agent, which has power to issue its complaint against the person charged with the unfair labor practice. If complaint is issued, there must be a hearing before the Board or a member thereof or its agent. The person against whom the complaint is issued may answer and produce testimony. Other persons may be allowed to intervene and present testimony, but only in the discretion of the Board, or its member or agent conducting the hearing. § 10 (b).[4] The hearing is under the control of the Board. The determination whether or not the person named in the complaint has engaged or is engaging in the unfair labor practice rests with the Board. If the Board is of the opinion that the unfair labor practice has been shown, the Board must state its findings of fact and issue its "cease and desist" order with such affirmative requirements as will effectuate the policy of the Act. § 10 (c).[5]

So far, it is apparent that Congress has entrusted to the Board exclusively the prosecution of the proceeding by its own complaint, the conduct of the hearing, the adjudication and the granting of appropriate relief. The Board as a public agency acting in the public interest, not any private person or group, not any employee or group of employees, is chosen as the instrument to assure protection from the described unfair conduct in order to remove obstructions to interstate commerce.

When the Board has made its order, the Board alone is authorized to take proceedings to enforce it. For that purpose the Board is empowered to petition the Circuit Court of Appeals for a decree of enforcement. The court

[4] 29 U. S. C. 160 (b).
[5] 29 U. S. C. 160 (c).

is to proceed upon notice to those against whom the order runs and with appropriate hearing. If the court, upon application by either party, is satisfied that additional evidence should be taken, it may order the Board, its member or agent, to take it. The Board may then modify its findings of fact and make new findings. The jurisdiction conferred upon the court is exclusive and its decree is final save as it may be reviewed in the customary manner. § 10 (e).[6] Again, the Act gives no authority for any proceeding by a private person or group, or by any employee or group of employees, to secure enforcement of the Board's order. The vindication of the desired freedom of employees is thus confided by the Act, by reason of the recognized public interest, to the public agency the Act creates. Petitioner emphasizes the opportunity afforded to private persons by § 10 (f).[7] But that opportunity is given to a person aggrieved by a final order of the Board which has granted or denied in whole or in part the relief sought. That is, it is an opportunity afforded to *contest* a final order of the Board, not to *enforce* it. The procedure on such a contest before the Circuit Court of Appeals is assimilated to that provided in § 10 (e) when the Board seeks an enforcement of its order. But that assimilation does not change the nature of the proceeding under § 10 (f), which seeks not to require compliance with the Board's order but to overturn it.

What Congress said at the outset, that the power of the Board to prevent any unfair practice as defined in the Act is exclusive, is thus fully carried out at every stage of the proceeding. The text of the Act is so clear in this respect that there is no need to comment upon its legislative history. But this puts in a strong light the

[6] 29 U. S. C. 160 (e).
[7] 29 U. S. C. 160 (f).

legislative intent. In the Senate, the Committee on Education and Labor in its report on the bill said: [8]

"Section 10 (a) gives the National Labor Relations Board exclusive jurisdiction to prevent and redress unfair labor practices, and, taken in conjunction with section 14, establishes clearly that this bill is paramount over other laws that might touch upon similar subject matters. Thus it is intended to dispel the confusion resulting from dispersion of authority and to establish a single paramount administrative or quasi-judicial authority in connection with the development of the Federal American law regarding collective bargaining."

And the Committee on Labor of the House of Representatives in its report stated: [9]

"The Board is empowered, according to the procedure provided in section 10, to prevent any person from engaging in any unfair labor practice listed in section 8 'affecting commerce', as that term is defined in section 2 (7). This power is vested exclusively in the Board and is not to be affected by any other means of adjustment or prevention. The Board is thus made the paramount agency for dealing with the unfair labor practices described in the bill."

After referring to the suitable adaptation of the Board's orders to the needs of particular cases, and especially to the power to reinstate employees with or without back pay, the Committee continued:

"No private right of action is contemplated. Essentially the unfair labor practices listed are matters of public concern, by their nature and consequences, present or potential; the proceeding is in the name of the Board, upon the Board's formal complaint. The form of in-

[8] Sen. Rep. No. 573, 74th Cong., 1st sess., p. 15.

[9] H. R. Rep. No. 972, 74th Cong., 1st sess., p. 21.

junctive and affirmative order is necessary to effectuate the purpose of the bill to remove obstructions to interstate commerce which are by the law declared to be detrimental to the public weal."

In both Houses of Congress, the Committees were careful to say that the procedure provided by the bill was analogous to that set up by the Federal Trade Commission Act, §. 5,[10] which was deemed to be "familiar to all students of administrative law." That procedure, which was found to be prescribed in the public interest as distinguished from provisions intended to afford remedies to private persons, was fully discussed by this Court in *Federal Trade Commission* v. *Klesner*, 280 U. S. 19, 25, where it was said:

"Section 5 of the Federal Trade Commission Act does not provide private persons with an administrative remedy for private wrongs. The formal complaint is brought in the Commission's name; the prosecution is wholly that of the Government; and it bears the entire expense of the prosecution. A person who deems himself aggrieved by the use of an unfair method of competition is not given the right to institute before the Commission a complaint against the alleged wrongdoer. Nor may the Commission authorize him to do so. He may of course bring the matter to the Commission's attention and request it to file a complaint. But a denial of his request is final. And if the request is granted and a proceeding is instituted, he does not become a party to it or have any control over it."

That sort of procedure concerning unfair competition was contrasted with that provided by the Interstate Commerce Act in relation to unjust discrimination. We said that "in their bearing upon private rights" they are "wholly dissimilar." The Interstate Commerce Act im-

---

[10] 38 Stat. 719, 15 U. S. C. 45.

poses upon the carrier many duties and creates in the individual corresponding rights. For the violation of the private right it affords "a private administrative remedy." The interested person can file as of right a complaint before the Interstate Commerce Commission and the carrier is required to make answer. We said that the Federal Trade Commission Act "contains no such features." *Id.,* p. 26. The present Act, drawn in analogy to the Federal Trade Commission Act, contains no such features.

As Congress has in this instance created a public agency entrusted by the terms of its creation with the exclusive authority for the enforcement of the provisions of the Act, decisions dealing with the legal obligations arising under the Railway Labor Act[11] cannot be regarded as apposite. *Texas & New Orleans R. Co.* v. *Brotherhood of Railway Clerks,* 281 U. S. 548, 569, 570; *Virginian Railway Co.* v. *System Federation No. 40,* 300 U. S. 515, 543, 544.

We think that the provision of the National Labor Relations Act conferring exclusive power upon the Board to prevent any unfair labor practice, as defined,—a power not affected by any other means of "prevention that has been or may be established by agreement, code, law, or otherwise"—necessarily embraces exclusive authority to institute proceedings for the violation of the court's decree directing enforcement. The decree in no way alters, but confirms, the position of the Board as the enforcing authority. It is the Board's order on behalf of the public that the court enforces. It is the Board's right to make that order that the court sustains. The Board seeks enforcement as a public agent, not to give effect to a "private administrative remedy." Both the order and the decree are aimed at the prevention of the

---

[11] 45 U. S. C. 151. See 50 Harvard Law Review 1089, 1090.

unfair labor practice. If the decree of enforcement--is disobeyed, the unfair labor practice is still not prevented. The Board still remains as the sole authority to secure that prevention.· The appropriate procedure to that end is to ask the court to punish the violation of its decree as a contempt. As the court has no jurisdiction to enforce the order at the suit of any private person or group of persons, we think it is clear that the court cannot entertain a petition for violation of its decree of enforcement save as the Board presents it. As the Conference Report upon the bill stated,[12] in case the unfair labor practice is resumed, "there will be immediately available to the Board an existing court decree to serve as a basis for contempt proceedings."

The order of the Court of Appeals denying petitioner's motion is

*Affirmed.*

MR. JUSTICE MURPHY took no part in the consideration and decision of this cause.

---

[12] Conference Report, Cong. Rec., 74th Cong., 1st sess., pt. 9, ·p. 10,299.