## STEWART DIE CASTING CORPORATION v. NATIONAL LABOR RELATIONS BOARD.

### No. 7132.

Circuit Court of Appeals, Seventh Circuit.

Dec. 31, 1942.

802

See, also, 7 Cir., 114 F.2d 849; Id., 7 Cir., 129 F.2d 481.

Silas H. Strawn, Frank H. Towner, and Thomas S. Tyler, all of Chicago, Ill., for petitioner.

Robert B. Watts, of Washington, D. C., for respondent.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

EVANS, Circuit Judge.

The complexities of the case have so increased since the entry of the final decree, that we now have before us, for disposition, the following motions and petitions:

1. Petition of the Labor Board for "Instructions as to Manner of Distribution of Back Pay."

2. Petition of Stewart Die Casting Corporation with "Respect to Claim of Lien."

3. Motion of Thomas Owens, attorney for certain employees, to vacate Order of October 20, 1942, denying his prior petition of October 7, and asking leave to Employees to Intervene.

4. Amendment to motion described above as "3".

5. Special Appearance by the law firm of Owens & Owens to Dismiss Petition of Labor Board (item "1" above) for instructions.

6. Special Appearance by law firm of Owens & Owens to Dismiss Petition of Stewart Die Casting Corporation (item "2" above).

7. Motion and Answer to Petition for Instructions (item "1" above) filed by employees of the Company, by firm of Owens & Owens.

8. Relief sought by employer against attorney's lien.

The original decree of this court, ordering enforcement of the Board's order, was entered on October 29, 1940. Thereafter the Board applied for, and was granted, a rule against the Company, to show cause why it should not be adjudged in contempt. The Board and Company thereafter composed their disputes as to amounts due the discharged employees, and entered into a "compliance stipulation," whereby the Company paid to the Board the sum of $300,000, to cover its entire back pay liability to the employees.

Upon such payment, and upon consent of the Board, we entered an order, on October 20, wherein the contempt order was discharged and the petition of Thomas Owens, as agent of the employees, to restrain the "Board from disbursing the $300,000" etc., was denied.

The heart of the various controversies is traceable to the contention of the employees and their attorneys that the Board erred in accepting $300,000 as a lump settlement of the employees' right to back pay, as decreed in our original order of enforcement. In other words, so it is asserted, the employees are owed a much larger sum, and the Board had no right or authority to accept less than the full amount due the employees upon our order. The aggrieved employees contend that they have a right to intervene and be heard on their contention that they are being deprived, by virtue of the lump sum settlement, of amounts up to 14% of their correct back wage claims.

An additional controversy concerns the duty of the Board to honor the attorneys' claim of 25% of the amount of the employees' recovery, under their retainer contracts with the employees, of which contracts the Board (and the Company) had full cognizance and for which a lien has been filed with, and asserted against, the employer.

■ While not unsympathetic generally to the employees' argument that they may not be deprived of part of their back pay without a hearing, we are compelled, under the statutory prescribed procedure, to hold that the Board is the duly specified and exclusively named agency to speak for and protect the employees in these proceedings.

The Court, in the Amalgamated Utility Workers v. Consolidated Edison Co. case, 309 U.S. 261, 60 S.Ct. 561, 563, 84 L.Ed. 738, interpreted the legislative intent in creating the Board, to have been that of guardian,—and sole guardian, of the rights of the employee, who is not, himself, entitled to appear as a party, or by his private attorney, to establish and protect his rights. The Court said:

"* * * Congress has entrusted to the Board exclusively the prosecution of the proceeding by its own complaint, the conduct of the hearing, the adjudication and the granting of appropriate relief. The Board as a public agency acting in the public interest, not any private person or group, not an employee or group of employees, is chosen as the instrument to assure protection from the described unfair conduct * * *. Again, the Act gives no authority for any proceeding by a private person or group, or by any employee or group of employees, to secure enforce-

ment of the Board's order. The vindication of the desired freedom of employees is thus confided by the Act, by reason of the recognized public interest, to the public agency the Act creates. * * * The Board seeks enforcement as a public agent, not to give effect to a 'private administrative remedy.'"

The statute, section 10(a), 29 U.S.C.A. § 160(a) provides:

"The Board is empowered * * * to prevent any person from engaging in any unfair labor practice * * *. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise."

■ Our jurisdiction is clearly limited. It may be invoked by an employee only when he brings his case within Section 10 (f) of the Act.

■ The Board, upon issuance of an order based on a complaint, answer, testimony, and findings, may invoke the jurisdiction of the court for an enforcement of its order. Section 10(f) provides that "any person aggrieved by a final order of the Board, granting or denying * * * the relief sought may obtain a review * * * in any circuit court of appeals of the United States." This provision is the only one which authorizes any party, save the Board, to invoke the court's jurisdiction.

As said in Amalgamated Utility Workers v. Edison Co., supra,

"The Act gives no authority for any proceeding by a private person or group, or by any employee or group of employees, to secure enforcement of the Board's order. The vindication of the desired freedom of employees is thus confided by the Act, by reason of the recognized public interest, to the public agency the Act creates."

■ The employee is, by this section (Sec. 10 (f), given an opportunity to *contest* the order of the Board. He is not given the right to *enforce* the order. 309 U.S. 266, 60 S.Ct. 561, 84 L.Ed. 738.

■ Making an employee whole for his improper discharge is an immediate, though secondary object of these proceedings. The Act, and all proceedings taken under it, are for the primary object of keeping the channels of commerce open.

In plain and practical language, one of its hoped-for objects was to prevent strikes. It was not enacted for either the employer or the employee. If we keep this thought clearly to the front, we can better understand why the exclusive right (save in one instance) to invoke the court's jurisdiction is lodged in the Board.

■ Our conclusion is that the Board is the public agency and as such has the exclusive right to start contempt, as well as other proceedings to enforce the order of the Board.

■ It may seem unreasonable and illogical to hold that the employees who are entitled to the money which the employer pays for their unlawful discharge, and which will "make them whole" may not be heard, but must accept and abide the determination of the Board. In passing, it may be observed that the Act is somewhat revolutionary and contains unusual provisions, the most pronounced of which is the large and autocratic powers of the Board and the sanctity of its fact findings. What the employer has been compelled to accept in many contested cases, the employee is here getting its full and unhappy experience. Both sides, employers and employees, must realize that the courts must accept the Act as it is. Our jurisdiction, as well as the large powers of the Board, including the finality of its findings, is defined by the Act. We can not rewrite or amend it. Of its wisdom, we are not the judge. It is for Congress, not the judiciary, to amend and correct it, if changes in the Act are desirable.

■ It follows that the motion of the employees to vacate the order of October 20th, and their motion to intervene, as well as their later-filed motion for leave to appear and oppose the motion of the Labor Board for instructions, are all beyond the power of this court to grant.

As to the other petitions and motions, namely, the petition of the Labor Board for instructions as to the manner of distribution of back pay, etc., and the petition of the employer for relief against the claim of lien filed by counsel for employees, little can or need be said.

■ We are convinced that our jurisdiction is extremely limited. We are permitted to review upon the petition of employer or employees only one order of the Board. Sec. 10(f).

Upon the petition of the Board, we may grant enforcement orders. This is the extent of our jurisdiction, and it is of an appellate court review character.

We are not—particularly after the enforcement order has been entered and the proceedings closed in that respect—authorized to entertain a petition by the employees for relief. Nor · may we hear the complaint of the employer. Nor is there authority for our receiving and hearing the petition of the Board which seeks instruction on payment of funds to the employees. The attorneys for the employees and the Board must find their rights as well as the remedies, within the provisions of the Act.

The sharp and bitter contest between the Board and the employees over the amounts due the employees from the employer, and the right of the employees to assign a part of their claim to the attorneys for services rendered, are not disputes of which we can take jurisdiction on the plea that we have jurisdiction to enter an order enforcing the Board's original order.

The petition of the employer for relief in respect to claim for lien of attorneys for the employees must be and is denied. The petition of the Board for instructions respecting payment to employees and employees' counsel is denied. The petition of employees for leave to intervene and to vacate order of October 20, 1942, and for other relief is denied.