In the Matter of the Arbitration between UNITED STEELWORKERS OF AMERICA, C.I.O., LOCAL UNION NUMBER 3775, et al., Petitioners, and LENNOX FURNACE COMPANY, INC., Respondent.

Supreme Court, Special Term, Onondaga County, June 14, 1954.

*Sidney H. Greenberg* for petitioners.

*Henry S. Fraser* for respondent.

RINGROSE, J. The petitioners in this proceeding involving a labor dispute, move pursuant to sections 1448 and 1450 of the Civil Practice Act for an order directing the respondent to proceed to arbitration in accordance with the provisions of

a collective bargaining agreement in force at the time, which the petitioners urge applies to the present controversy.

The respondent cross-moves for a dismissal of the petition on the ground that the court has not jurisdiction of the subject matter of the proceeding and, on the further ground, that the contract does not provide for arbitration of a dispute of the nature involved.

The respondent is subject to the National Labor Relations Act due to its interstate activities in the commercial field. The National Labor Relations Board certified in November, 1949, the United Steelworkers of America, C.I.O. (hereinafter referred to as "Union"), one of the petitioners herein, as the bargaining representative for the production and maintenance employees at the respondent's Syracuse plant. On February 10, 1954, the Union was again certified.

The labor contract involved in this proceeding was signed by the respondent and by both of the petitioners on February 25, 1952, and according to its terms, terminated on December 31, 1953. A copy of the contract was submitted by the petitioners and referred to as " Exhibit A ".

The events culminating in this application by petitioners are documented by copies of original exhibits appended to the petition, and occurred chronologically in the following order.

On the 28th day of September, 1953, effective as of that date, the respondent caused to be served on Ernest Weaver, one of its employees and a member of United Steelworkers of America, C.I.O., an international union (hereinafter sometimes referred to as " International "), a five-day suspension notice with the recommendation that his services to the respondent be terminated at the expiration thereof. The notice specified the cause for his suspension as " intimidating and threatening violence to an employee on company property on September 23, 1953."

On September 28, 1953, Weaver requested in writing a hearing on the suspension notice.

On October 7, 1953, respondent caused to be served on Weaver a notice in writing to the effect that the suspension was converted into a discharge and recited in substance that its action was based upon the facts and statements made by him on the hearing.

On October 8, 1953, Mr. Weaver caused to be served upon the respondent a grievance report in which it was claimed that he was discriminated against and unjustifiably discharged, and that he should be reinstated and compensated for all lost time.

On October 14, 1953, pursuant to the grievance procedure prescribed in the contract, a meeting was held attended by Weaver and by representatives of the petitioners and of the respondent. At this meeting it was urged by the respondent that the National Labor Relations Board had acquired exclusive jurisdiction of the matter. The decision reached at this meeting was as follows: "This grievance is without substance and the discharge should stand."

Prior to the aforesaid meeting, on October 12, 1953, there had been filed with the National Labor Relations Board by Union, a charge accusing the respondent of unlawful discrimination against Weaver in violation of paragraph (3) of subdivision (a) of section 8 of the National Labor Relations Act (U. S. Code, tit. 29, § 158, subd. [3]), which makes it an unfair labor practice for an employer to discriminate against an employee because of his union activities.

The National Labor Relations Board assigned a field examiner to investigate the charge, and following such investigation the board announced on November 2, 1953, that the charge had been "carefully investigated and considered" and found insufficient evidence of violations to warrant issuing a complaint in the matter. The board also called attention to the procedure for review of its action, which was not pursued.

On October 26, 1953, petitioners caused to be served on the respondent a demand that the grievance be submitted to arbitration.

On October 29, 1953, the respondent notified the petitioners of its refusal to proceed to arbitration, and of its contention that the issue raised was within the exclusive jurisdiction of the National Labor Relations Board.

Thereafter, and on November 19, 1953, International filed on behalf of Weaver, another charge with the National Labor Relations Board alleging that the refusal of the respondent to arbitrate constituted a refusal to bargain collectively in violation of paragraph 5 of subdivision (a) of section 8 of the National Labor Relations Act. (U. S. Code, tit. 29, § 158, subd. [5].)

The board assigned to investigate the charge, the same attorney who acted on the previous charge and, after receiving additional data demanded of the respondent, issued a complaint based upon the second charge and noticed a hearing. Following the service of the respondent's answer to the complaint and prior to the hearing, the complaint and notice of hearing were vacated by the board. On January 11, 1954, the board announced its disposition of the complaint, the pertinent

portion of which reads: " The above-captioned case charging a violation under Section 8 of the National Labor Relations Act, as amended, has been carefully investigated and considered. It does not appear that further proceedings are warranted inasmuch as there is insufficient evidence of violations. I am, therefore, refusing to issue Complaint in this matter."

The charge filed by Union on behalf of Weaver with the National Labor Relations Board which was determined adversely to him operated as a waiver of the right to have the grievance submitted to arbitration pursuant to the grievance provisions of the contract, assuming that arbitration thereof was not prohibited by the National Labor Relations Act. Moreover, the National Labor Relations Board having assumed jurisdiction of the controversy, precluded any further proceedings in the State courts even though jurisdiction of the controversy originally existed, the ultimate result of which might be inconsistent with the disposition made by the National Labor Relations Board. (*Capital Service* v. *National Labor Relations Bd.*, 347 U. S. 501.)

The respondent contends that under paragraph (3) of subdivision (a) of section 8 of the National Labor Relations Act, exclusive jurisdiction to pass on the merits of the grievance charged, was vested in the National Labor Relations Board. Weaver alleged that he was " discriminated against and unjustifiably discharged ". The charge filed with the National Labor Relations Board alleged that his suspension and discharge " constituted discrimination in regard to hire or tenure of employment ". The charge filed with the National Labor Relations Board on November 19, 1953, specified that the " Discharge was both discriminatory, and in violation of the contract between the Union and the Employer" and further alleges, " The Employer has several times refused to abide by said grievance procedure and to submit said grievance to arbitration, and still adamantly refuses so to do, all in violation of its said contract and its duty to bargain collectively in good faith with the charging Union."

It is significant that the charge made on behalf of Weaver in both instances was rejected on the ground of insufficient evidence of violation by the respondent, and not on the ground that the petitioner had recourse to the State courts to compel arbitration under the grievance clause of the contract, or that the National Labor Relations Board lacked jurisdiction under the National Labor Relations Act.

It appears from the affidavit of Charles Dodd verified on October 14, 1953, submitted by the petitioners on behalf of Weaver subsequent to the argument of the motion, that this controversy arose because of threats made by Weaver to Dodd under the belief that the latter was endeavoring to organize an independent union. It may be noted that in this affidavit Dodd seeks to retract his previous statement under date of September 25, 1953, on the ground that it was not of his own volition but was " company-inspired."

The contention of the petitioners that the grievance is in two parts, one subject to Federal, and the other to State jurisdiction, falls of its own weight as each rests upon suspension and discharge due to prohibited conduct by Weaver towards Dodd, a co-employee.

Subdivision (c) of section 158 of title 29 of the United States Code reads: " The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, *if such expression contains no threat of reprisal or force or promise of benefit.*" (Emphasis supplied.)

Subdivision (a) of section 10 of the National Labor Relations Act (U. S. Code, tit. 29, § 160, subd. [a]), insofar as pertinent provides: " The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: ".

It has been uniformly held that the exclusive jurisdiction of the board in respect to unfair labor practices continues the same today as prior to the Taft-Hartley Act, except for jurisdiction conferred on Federal District Court by title III of that act to entertain private damage actions for breach of contracts and for violation of the secondary boycott sections of the new statute. (*Matter of New York State Labor Relations Bd.* v. *Wags Transp. System,* N. Y. L. J. March 26, 1954, p. 1, col. 7; *Capital Service* v. *National Labor Relations Bd.,* 347 U. S. 501, *supra*; *Amalgamated Workers* v. *Edison Co.,* 309 U. S. 261; *National Labor Relations Bd.* v. *International Union,* 194 F. 2d 698; *National Labor Relations Bd.* v. *Walt Disney Productions,* 146 F. 2d 44, certiorari denied 324 U. S. 877; *National Labor Relations Bd.* v. *Bell Aircraft Corp.,* 206 F. 2d 235; *Garner* v. *Teamsters Union,*

346 U. S. 485; *Matter of Stowe [Aircooled Motors]*, 204 Misc. 228.)

In *Matter of Benedict (Limited Editions Club)* (265 App. Div. 518), the court in reversing an order confirming an arbitral award reinstating two discharged employees with back pay, ruled as follows: " By statute, the exclusive method for reinstatement available to the two employees engaged in interstate commerce, allegedly discharged for labor activities, would be upon a proceeding had before the National Labor Relations Board. (National Labor Relations Act, § 10; U. S. Code, tit. 29, § 160; *Amalgamated Workers* v. *Edison Co.,* 309 U. S. 261, 266, 267.) "

In view of the overwhelming preponderance of authority opposed to the petitioners' contention as to the jurisdiction of this court, I am constrained to the conclusion that the application of the petitioners must be denied.

In view of this disposition the question as to whether the grievance of Weaver was one reasonably contemplated in the grievance article of the contract, becomes academic.

Submit order accordingly.