**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DEENA ARTWARE, Incorporated, Respondent.**

No. 11156.

United States Court of Appeals Sixth Circuit.

Jan. 17, 1958.

No oral argument. Submitted on motion and response thereto.

Jerome D. Fenton, Stephen Leonard, Winthrop A. Johns, Julius G. Serot, Walter N. Moldawer, Washington, D. C., for petitioner.

James G. Wheeler, Paducah, Ky., for respondent.

Before MARTIN, MILLER and STEWART, Circuit Judges.

MILLER, Circuit Judge.

On July 30, 1952, this Court entered its decree enforcing an order of the National Labor Relations Board directing, inter alia, that 56 employees be made whole for losses sustained as a result of discrimination against them by the respondent arising out of a strike. N. L. R. B. v. Deena Artware, Inc., 6 Cir., 198 F.2d 645, certiorari denied 345 U.S. 906, 73 S.Ct. 644, 97 L.Ed. 1342.

On December 16, 1955, this Court entered a supplemental decree enforcing the Board's back pay determination and directing the respondent to pay to named employees specific amounts of back pay, which totaled approximately $300,000.00. N.L.R.B. v. Deena Artware, Inc., 6 Cir., 228 F.2d 871.

The respondent has not made the payments so ordered. It contends that it was forced by economic conditions and this labor dispute, see United Brick & Clay Workers of America v. Deena Artware, Inc., 6 Cir., 198 F.2d 637, certiorari denied, 344 U.S. 897, 73 S.Ct. 277, 97 L.Ed. 694; Deena Products Co. v. United Brick & Clay Workers of America, 6 Cir., 195 F.2d 612, to discontinue the operation of its plant during the year 1953, that it is financially unable to make the payments, and that there are no assets available for that purpose. It contends that whatever assets were available for creditors have through bona fide business transactions been used in the payment of, or to secure the payment of, its legal obligations.

The Board contends that the respondent, Artware, and several affiliated corporations were and are integral parts of a single enterprise substantially owned and controlled by George H. Weiner, president and treasurer of Artware; that the operations of Artware were conducted in a manner which prevented it from having assets, and thereby prevented compliance with the back pay provisions of the decrees; that Artware's assets were siphoned off or transferred to affiliated companies, in consequence of which it appeared that Artware was left with no assets with which to comply with the decree; that the affiliated corporations are *alter egos* and/or successors to Artware within the meaning of the decrees; and that the aforesaid George H. Weiner and the affiliated corporations referred to above are subject to the back pay provisions of the decrees and responsible for the failure to comply therewith, and liable for payment of said back pay.

The Board has filed a motion that the respondent and the several affiliated corporations be directed to produce and permit the Board to inspect, copy and photograph numerous books, records, bank statements and types of papers and documents which would show the financial condition of the respondent and the respective obligations and credits rendered between respondent and the affiliated corporations. It also asked that certain present or former officers of respondent and the affiliated corporations be directed to give depositions taken upon oral examination by the petitioner with respect to the financial ability of the respondent to comply with the provisions of the supplemental decree and the dealings and relationship of respondent with said affiliated corporations.

The respondent has filed a response objecting to the motion, which reviews the litigation arising out of the strike, its unsuccessful attempt to meet the problems caused by the strike resulting in discontinuance of operations at its plant during the year 1953, the financial transactions entered into in connection therewith, and its resulting financial inability to make the payments to its employees as directed by the supplemental decree.

The present motion is not in support of any contempt proceeding, as was the case in N.L.R.B. v. Parsons Punch Corp., 6 Cir., 249 F.2d 956. Bethlehem Shipbuilding Corp. v. N.L.

R.B., 1 Cir., 120 F.2d 126, and N.L.R.B. v. Remington Rand, Inc., 2 Cir., 130 F.2d 919, which are relied upon by petitioner, also involved contempt proceedings. Nor were the issues in those cases an alleged financial inability to pay. No contempt of court has been charged in the present case. We recognize that in some instances certain proceedings by the Board, not recognized at common law, are approved by the Courts for the purpose of effectuating the public purposes of the Act. National Licorice Co. v. N.L.R.B., 309 U.S. 350, 362, 60 S.Ct. 569, 84 L.Ed. 799; Consumers Power Co. v. N.L.R.B., 6 Cir., 113 F.2d 38, 44. Contempt proceedings may come under that head, although we are not called upon to decide that question in the present proceeding. If this proceeding was to give effect to the declared public policy of the Act, we would have a different question to consider from what is now before us. But, in the absence of contempt proceedings, the present proceeding is purely a proceeding for the enforcement of private individual rights, namely, an attempt to collect from an insolvent corporation money judgments running in favor of private individuals. As the Supreme Court said in Nathanson v. N.L.R.B., 344 U.S. 25, 28, 73 S.Ct. 80, 83, 97 L.Ed. 23, "The policy of the National Labor Relations Act is fully served by recognizing the claim for back pay as one to be paid from the estate."

■■ As pointed out in the Nathanson case, 344 U.S. 25, 27–28, 73 S.Ct. 80, the beneficiaries of the back pay awards are private persons for whom the Board is acting as agent. The claims have no status or priority different from that enjoyed by other unpaid wage claims. As stated by the Supreme Court in National Licorice Co. v. N.L.R.B., supra, 309 U.S. 350, 362, 60 S.Ct. 569, 576, "The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights." In Amalgamated Utility Workers (C.I.O.) v. Consolidated Edison Co.. 309 U.S. 261, 267, 60 S.Ct.

561, 564, 84 L.Ed. 738, the House Committee Report is quoted as saying, "No private right of action is contemplated." In Agwilines, Inc. v. N.L.R.B., 5 Cir., 87 F.2d 146, 150, the Court said, "The proceeding is not, it cannot be made, a private one to enforce a private right. It is a public procedure, looking only to public ends." This Court has recognized and referred to the fact that the Board does not exist for the adjudication of private rights. N.L.R.B. v. Hudson Motor Car Co., 6 Cir., 136 F.2d 385, 387; Consumers Power Co. v. N.L.R.B., supra, 6 Cir., 113 F.2d 38, 44.

We are urged, however, to treat this motion for practical purposes as being in support of a proceeding for contempt, in that it will enable the Board to determine from a consideration of the evidence made available by the motion whether probable cause exists for instituting contempt proceedings. But orderly procedure does not consist in the taking of depositions and the compulsory production of books and records for examination by a claimant *before* the claimant files his complaint or pleading setting out the facts constituting his alleged cause of action. Whether the facts as claimed by the Board would as a matter of law constitute contempt of court is a legal question which the respondent is entitled to have decided before he is put to the expenditure of considerable time and money in producing the evidence out of which the claimant hopes to sustain his allegations. Probable legal issues are apparent. Is the fraudulent concealment of assets in order to avoid payment of the award contempt of court? Apparently, fraudulent concealment in the true sense of the words is not claimed in the present case. Is the inability to pay merely by reason of the payment of other creditors contempt of court? If so, is it limited to payments made subsequent to the rendition of the award or does it include payments to other creditors made prior to the rendition of the award? If limited to the first classification, should not the scope of the mo-

tion for discovery and inspection of documents be likewise limited as to the perid of time involved? The present motion asks for numerous records from April 5, 1948 to date. We do not attempt at this time to answer such questions as they have not been presented to us in the present proceeding, but such questions and other analogous ones point up the advisability of requiring the Board to definitely state its claim by an appropriate motion or pleading, the validity of which can then be questioned as a matter of law by the respondent, before the Board is authorized to start on the extensive and expensive discovery proceedings it is now seeking to undertake.

█ The present motion raises an issue not materially different from that previously raised by the Board in this same case and decided by this Court in N.L.R.B. v. Deena Artware, Inc., 6 Cir., 207 F.2d 798. There the claims of the discharged employees were still unliquidated. In the present proceeding they have become liquidated. As pointed out in that case the jurisdiction of this Court under Sect. 160(e), Title 29 U.S.C.A., is to enter "a decree enforcing, modifying, and enforcing as so modified, or in setting aside in whole or in part, the order of the Board" together with the granting of such temporary relief or restraining order as it deems just and proper. That jurisdiction has been exercised by our decree of enforcement of July 30, 1952, and our supplemental decree of December 16, 1955, which changed the unliquidated claims of the discharged employees into liquidated ones. In the absence of contempt proceedings, we do not find that jurisdiction is conferred upon us to order and supervise discovery proceedings in the appellate court for the purpose of enforcing a monetary award running in favor of a private individual, even though the award has received its vitality from a previous decree of this Court. Certainly, it is not customary for an appellate court to retain jurisdiction of a cause which it has decided in order to be assured that its

judgment or decree will be subsequently carried out by the parties. Eliminating any issue of contempt, what we said in our earlier opinion in this case, 207 F.2d 798, 801, would seem to be just as applicable to a liquidated claim as to an unliquidated one. We repeat: "If one creditor is improperly or fraudulently obtaining an advantage over another creditor there are available to the complaining creditor common law or statutory remedies in courts of original jurisdiction, independent of equitable action by this Court, for the protection of his interest. The questions involved in controversies between creditors of the same debtor who has insufficient assets to pay both creditors in full are both factual and legal, and on the factual side usually require the taking of proof and the facilities of a trial court. The Board should avail itself of such remedies and facilities for the enforcement or protection of its claim before attempting to invoke the equitable jurisdiction of this Court for that purpose." See cases cited in support. We consider that to be the law of this case. Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666, 669; United States v. Wainer, 7 Cir., 240 F.2d 595, 596.

It is argued that thus relegating the collection of these awards to courts of original jurisdiction will result in irreparable injury to the claimants because of lack of authority on the part of the Board to institute proceedings in such courts. To what extent, if any, the Board may be restricted in attempting to collect these awards through court processes normally available to unpaid judgment creditors, is an open question which we will not attempt to decide in this case. But it is to be noticed that such a restriction was not suggested by the Supreme Court in Nathanson v. N.L.R.B., supra, in which the Board attempted collection of such claims in a bankruptcy proceeding. In any event, the Board is not the real party in interest but is acting as agent for the em-

ployees. Nathanson v. N.L.R.B., supra, 344 U.S. 25, 27, 73 S.Ct. 80, 97 L.Ed. 23. It is logical to conclude that if collection of the awards is not part of the public policy of the Act, the courts are open to the claimants as individual creditors for the enforcement of their awards. If it is part of the public policy of the Act, the proper procedure would seem to be through contempt proceedings, by which the issue would be raised whether the allegations of the pleading legally constitute contempt. Amalgamated Utility Workers (C.I.O.) v. Consolidated Edison Co., supra, 309 U.S. 261, 269–270, 60 S.Ct. 561, 84 L.Ed. 738.

Petitioner's motion is overruled.

STEWART, Circuit Judge (dissenting).

The denial of the present motion for discovery seriously impairs the effectiveness of the Board as the agency primarily responsible for the administration of the National Labor Relations Act. The alternatives now left to the Board appear to be neither desirable nor practical.

It is suggested by the majority that the motion might be proper if the Board should institute contempt proceedings against the respondent. But, if the Board is denied access to the respondent's records, it will probably be impossible to determine before such proceedings are begun whether the enforcement order of this court is actually being flaunted so as to warrant the charge of contempt.

In N.L.R.B. v. Deena Artware, Inc., 6 Cir., 207 F.2d 798, 802, this court said, "It will be time enough to rule on any question of contempt when the order to pay becomes liquidated and final. If, at that time, any financial inability on the part of the respondent to pay the awards is shown to be the result of improper actions on its part in the meantime, appropriate contempt action can then be taken." The back-pay awards having now become liquidated and final, it seems to me that in conformity with these words of the court's previous opinion the Board should now be given an opportunity to ascertain before bringing contempt proceedings whether the respondent has in fact been guilty of the improper actions alleged. N.L.R.B. v. Dixon, 8 Cir., 1951, 189 F.2d 38. That would appear preferable to requiring the Board to bring a contempt action, and only then allowing it to determine whether the facts show probable cause.

But it is with the alternative suggestion of my brothers that I have a more basic difficulty—the suggestion that the Board proceed in a trial court as an ordinary judgment creditor. My difficulty stems from a fundamental difference in our concepts as to the nature of the jurisdiction conferred upon this court by Section 10(e) of the National Labor Relations Act, 29 U.S.C.A., § 160 (e). It is of course true, as the majority opinion points out, that an appellate court does not customarily retain jurisdiction of a case in order to insure that its judgment will be carried out by the litigants. That function is ordinarily performed by the *nisi prius* court from which the appeal came, since that court possesses power to compel obedience to a judgment.

But in exercising the statutory jurisdiction conferred upon it by Section 10 (e) of the Act, this court does not serve as an appellate court. In a very real sense, the jurisdiction conferred by that section is original jurisdiction. Certainly it is original (and exclusive) judicial jurisdiction. No power to enforce an order is conferred upon the Board itself, nor upon courts generally. Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 48–49, 58 S.Ct. 459, 82 L.Ed. 638. To what court is it contemplated that the Board should now turn?

Even if the Board could properly now institute a trial court proceeding, the object of such a proceeding could only be the effectuation of the enforcement decree of this court. The effectuation of that decree is the proper business of this court alone. Whether or not the

Board is called a judgment creditor of the respondent, any action taken in a trial court would stem solely from the enforcement decree of this court, whose function it is to retain jurisdiction to administer all necessary further relief. See N.L.R.B. v. Sunshine Mining Co., 9 Cir., 1942, 125 F.2d 757, 760–761; cf. N.L.R.B. v. Underwood Machinery Co., 1 Cir., 1952, 198 F.2d 93.

Nathanson v. N.L.R.B., 1952, 344 U. S. 25, 73 S.Ct. 80, 83, 97 L.Ed. 23, does not seem to me to imply a contrary conclusion. There the Board was permitted to prove an enforced back-pay award as a claim in the employer's bankruptcy proceeding. It is true that the Court spoke of the bankruptcy action as a "contest * * * between various classes of creditors," including the Board, but that case does not go so far as to hold that the Board is to be treated as an ordinary judgment creditor whenever it attempts to effectuate an enforcement decree. Moreover, there is no contest between creditors here. The controversy is solely between the respondent and the Board. Thus the motion for discovery is not merely an attempt by one judgment creditor to determine whether he is being defrauded by an illusory transfer of assets; it is, rather, an attempt by the Board to determine the sole remaining issue in dispute—whether the respondent's failure to comply with the decree of this court was occasioned by genuine financial inability.

My colleagues suggest that if the Board itself is unable to institute an action for the collection of back-pay awards, the courts would be open to the individual claimants to secure enforcement of their awards. This suggestion seems completely at odds with the decisions cited in the majority opinion which hold that the Act does not create a private right of action. A private party has no standing either to institute proceedings to enforce an order of the Board or to secure implementation of a Board order which has been upheld by a court of appeals. Amalgamated Utili-

ty Workers (C.I.O.) v. Consolidated Edison Co., 1940, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738; National Licorice Co. v. N.L.R.B., 1940, 309 U.S. 350, 362, 60 S.Ct. 569, 84 L.Ed. 799; see also Stewart Die Casting Corp. v. N.L.R.B., 7 Cir., 1942, 132 F.2d 801.

Finally, today's order seems to me inconsistent with the recent order of this court in N.L.R.B. v. Parsons Punch Corp., 6 Cir., 249 F.2d 956. While it is true that the Board initiated contempt proceedings in the Parsons case, we held those proceedings in abeyance to give the Board an opportunity, by way of the discovery procedure there ordered, to determine whether the respondent in that case was in fact guilty of substantially the same kind of conduct as that alleged here.

I would grant the motion.