**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**STEINERFILM, INC., Respondent.**

**No. 81–1437.**

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1982.
Decided March 8, 1983.

See also, 1st Cir., 669 F.2d 845.

Peter Ames Eveleth, Asst. Gen. Counsel, Washington, D.C., for Contempt Litigation, and Ruah Donnelly Lahey, Washington, D.C., on petitioner's motion for post-judgment discovery.

Michael B. Keating, Joseph W. Ambash, Kevin J. Fitzgerald, and Foley, Hoag & Eliot, Boston, Mass., on opposition to motion for post-judgment discovery.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

The National Labor Relations Board seeks an order from this court for discovery against Steinerfilm, Inc., to help it to decide whether Steinerfilm is complying with the Board's order, enforced in *NLRB v. Steinerfilm, Inc.,* 669 F.2d 845 (1st Cir.1982). Initially, we denied the Board's motion, stating that we were

> not persuaded that the case law supports the issuance of such an order absent either a contempt or an unfair labor practice proceeding, or a showing that a company is attempting to avoid financial responsibility for back pay.

At the Board's request, we granted a rehearing, and, with its help (and that of the Solicitor General) we surveyed relevant enforcement practice in other agencies. We conclude that our initial denial of the Board's motion was correct. We do not doubt our power to take appropriate action to see that our "NLRB" decrees are enforced. *E.g., NLRB v. Union Nacional de Trabajadores,* 611 F.2d 926 (1st Cir.1979). But we do not believe it appropriate, as a matter of course, to issue discovery orders for the Board, *before the Board has brought a contempt proceeding, and* in the absence of any specific statutory authority, any specific authority arising from the decree itself, or some special circumstance. We reach this conclusion for the following reasons.

First, the Board has specific statutory authority to obtain the information it seeks in other ways. Section 11 of the National Labor Relations Act, 29 U.S.C. § 161, grants the Board broad information gathering powers. It can subpoena witnesses and documents, "administer oaths," "examine witnesses, and receive evidence" in any investigation "which, in the opinion of the Board," is "necessary and proper for the

exercise" of its power to prevent unfair labor practices. Although Section 10(e) of the Act, 29 U.S.C. § 160(e), makes court jurisdiction "exclusive" once review is sought, that word seems designed to prevent the Board from revising its order while under review; it does not appear to prevent the Board from independently investigating possible contempt and it certainly does not do so where, as here, the contempt in and of itself would constitute a separate unfair labor practice. In fact, the Supreme Court has expressly sanctioned the use of statutory investigation power to gather evidence of contempt, in a case in which similar "exclusive" jurisdiction was vested in the Court of Appeals. *United States v. Morton Salt Co.,* 338 U.S. 632, 640, 70 S.Ct. 357, 362, 94 L.Ed. 401 (1950) (Federal Trade Commission) ("May not the Commission, in view of its residual duty of enforcement, affirmatively satisfy itself that the decree is being observed?"). Moreover, if necessary, the Board, like other agencies, can provide for "visitorial" (information gathering) authority in its decrees. And, of course, court authorized discovery is available once a charge of contempt has been filed. *NLRB v. Deena Artware, Inc.,* 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960); *Bethlehem Shipbuilding Corp. v. NLRB,* 120 F.2d 126 (1st Cir.1941).

Second, uniform agency practice runs contrary to the NLRB's position. Our survey of practice by the SEC, FTC, ICC, Department of Justice (Antitrust Division), and the Department of Labor reveals that in comparable instances—where an agency has obtained a court order or decree—the agency does not obtain comparable court-ordered discovery prior to the filing of a contempt charge and has never done so. Typically the agency investigates possible contempt of a court decree either by using its independent statutory information gathering authority, or by exercising visitorial rights granted by the court decree itself, or by using court-ordered discovery *after* filing a contempt charge. For the most part, applicable information gathering statutes give other agencies powers roughly similar

to those that Section 11 gives the NLRB. 15 U.S.C. § 77s(b) (Securities Act of 1933) (language substantially similar to § 11); 15 U.S.C. § 78u(b) (Securities Exchange Act of 1934) (same); 15 U.S.C. § 49 (FTC Act) (same); 7 U.S.C. § 2046 (Department of Labor, Farm Labor Contractor Registration Act) (same); 33 U.S.C. § 927(a) (Department of Labor, Longshoremen's & Harbor Workers' Compensation Act) (same); 15 U.S.C. § 1312 (Department of Justice, Antitrust Division) (civil investigative demands); 29 U.S.C. § 211 (Department of Labor, Fair Labor Standards Act); 29 U.S.C. § 521 (Department of Labor, LMRDA); 30 U.S.C. § 813 (Department of Labor, Federal Mine Safety & Health Act of 1977). Moreover, other agencies typically face the same "practical obstacle" in gathering information that the NLRB complains of here, namely the fact that the agency, when meeting resistance, must apply to a district court to enforce its subpoenas. 15 U.S.C. § 77t(c) (Securities Act of 1933); 15 U.S.C. § 78u(e) (Securities Exchange Act of 1934); 15 U.S.C. § 49 (FTC Act); 15 U.S.C. § 1314(a) (Department of Justice, Antitrust Division); 29 U.S.C. § 209 (Department of Labor, Fair Labor Standards Act) (reference to 15 U.S.C. § 49); 7 U.S.C. § 2046 (Department of Labor, Farm Labor Contractor Registration Act) (same); 29 U.S.C. § 521(b) (Department of Labor, LMRDA) (same); 33 U.S.C. § 927(b) (Department of Labor, Longshoremen's & Harbor Workers' Compensation Act); 30 U.S.C. § 813(d) (Department of Labor, Federal Mine Safety & Health Act of 1977). The Board was invited to present to us any instance it could find in which another agency used court-ordered discovery in a comparable circumstance to investigate contempt before filing a charge. Presumably it could find none.

Third, because other agencies face similar problems arising under roughly similar statutes, we fear the precedential effect of an order authorizing pre-charge court-ordered investigatory discovery as a matter of course. If the Board can use discovery in the Court of Appeals to investigate possible contempt of its decree here, why could oth-er agencies not do the same with respect to possible contempt of district court orders? Yet, to ask a district court to issue discovery to investigate contempt without a charge before it or a provision in the decree authorizing it or some specific statute that provides for it is apparently unprecedented. And, it would seem to be a significant expansion of agency investigatory powers. Those powers, while typically broad, *see United States v. Morton Salt Co.,* 338 U.S. at 640–44, 70 S.Ct. at 362–65, are nonetheless subject to certain congressionally-imposed checks, such as the requirement of district court approval for subpoena enforcement when the agency proceeds under such a statute.

Fourth, to allow pre-charge discovery would create practical problems. For one thing, what standard would govern the use of such discovery? Would the Board obtain discovery on the basis of "suspicion," "reasonable suspicion," "cause"? Would the respondent be allowed discovery in turn? The creation of such standards is a near virgin enterprise. The stronger the standard, the less benefit the agency would derive from the *pre*-charge route; the weaker the standard, the more frequently the agency is likely to resort to it. For another thing, how are the details of discovery to be handled and how are disputes to be resolved? Should we appoint a special master? Should we ask the district court to supervise the process? These questions are not unanswerable; indeed, in *appropriate cases* we can and should decide them. Yet, to open an information gathering alternative that might require this court frequently to deal with these problems seems undesirable, for an appellate court is not institutionally well suited to manage information gathering efforts. While this court can deal with such a problem occasionally, its use as a matter of course (as could well develop should we provide our explicit sanction) is impractical and undesirable. And, while the Board to date has apparently been most abstemious in its requests for such discovery, how will it, and other agencies, react once the practice is expressly approved?

Fifth, the Board's efforts to distinguish the practices of other agencies are not convincing. The fact that the Board must rely upon the courts to enforce its substantive orders, while certain other agencies' orders are "self-enforcing," is beside the point. Here we are concerned only with an investigation of whether a party is complying with a *court* order as a prelude to asking a *court* to find contempt. The fact that the Board asks courts of appeals to enforce its substantive orders, while other agencies sometimes ask district courts to do so, also seems irrelevant, for the "pre-charge" discovery issue could arise in either court. If anything, there is *less* reason for allowing such discovery in a court of appeals, which is not used to supervising discovery, than in a district court, which handles such matters routinely. Nor have we been convinced that the Board's information gathering powers are significantly more limited than those of other agencies. As we have pointed out above, many agencies must go to the district court to enforce their investigative subpoenas; all agencies are free to insert visitorial clauses in decrees; and all agencies find courts more receptive to the use of discovery once contempt has been charged. The Board has not convinced us that these other powers. perhaps supplemented by special court assistance in special cases, are inadequate to deal with the problem of contempt.

Finally, the Board has produced a long string of authority that, in its view, supports its thesis that court issuance of a pre-charge contempt discovery order in a Labor Board case is a matter of "routine." Somewhat to our surprise, we have found that none of these citations is on point. Three of the cases involve discovery *subsequent* to the filing of a charge of contempt. *NLRB v. Deena Artware, Inc.,* 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960); *Bethlehem Shipbuilding Corp. v. NLRB,* 120 F.2d 126 (1st Cir.1941). *See NLRB v. Parson's Punch Corp.,* 249 F.2d 956 (6th Cir.1957) (although the opinion does not say so, the Sixth Circuit has indicated that in this case a contempt proceeding had begun, *NLRB v. Deena Artware, Inc.,* 251 F.2d 183, 184–85

(6th Cir.1958)). In *NLRB v. Dixon,* 189 F.2d 38 (8th Cir.1951), the court granted a discovery order prior to a filing of contempt, for a special reason: in its enforcement order, the court had expressly left to the NLRB the chore of determining the extent of the employer's ability to comply. The remaining cases cited by the Board consist of unpublished orders without opinion. All are too cryptic to allow us to tell whether a contempt charge had been filed previously. Of course, unpublished orders are. normally not authority at all, in part because they "usually fail to disclose fully the rationale of the court's decision . . . ." First Circuit Rule 14. And, even if they are being used here simply to show the *fact* of their existence, that fact is weak support, for nowhere has the court carefully considered the matter.

Indeed, the only opinion directly on point is that of the Sixth Circuit in *NLRB v. Deena Artware, Inc.,* 251 F.2d 183 (6th Cir. 1958). There, by a two-to-one majority the court rejected the Board's position. (By the time the case reached the Supreme Court on a related issue, a contempt charge had been filed.) The dissenter was then-Judge Potter Stewart, a fact that leads us to take special care. But, his dissent is of little help to the Board. In the two paragraphs that concern the issue here at stake, Justice Stewart argues that discovery should be granted, but he ties his argument to certain special facts of the case, described in a prior opinion, 207 F.2d 798 (6th Cir.1953). The court in that opinion was faced with the employer's statement that he would probably not be able to pay part of the court-ordered award; the court stated that it would not address any allegations of contempt until "the order to pay becomes liquidated and final." It then stated that

If, at that time, any financial inability on the part of the respondent to pay the awards is shown to be the result of improper actions on its part in the meantime, appropriate contempt action can then be taken.

207 F.2d at 802. Therefore, Justice Stewart argued,

18

The back pay award having now become liquidated and final, it seems to me that in conformity with these words of the court's previous opinion the Board should be given an opportunity to ascertain .... whether the respondent has in fact been guilty ....

251 F.2d at 187. Thus, in *Deena,* there was both a special need for the discovery, and a rough standard for its control; moreover, in *Deena,* the court could have considered itself bound by its statements at a previous stage of that same litigation. *Cf. NLRB v. Dixon,* 189 F.2d 38 (8th Cir.1951). In spite of these factors—which make *Deena* a much more sympathetic case for pre-charge discovery than the present case—the majority of the *Deena* court rejected the Board's position. Such a result is all the more justifiable where, as here, the "contempt" to be investigated consists simply of the committing of an unfair labor practice that arguably breaches an order that in effect states "commit no more unfair labor practices." This circumstance makes the Board's alternative statutory information gathering powers fully and indisputably applicable.

For these reasons we believe our initial determination was correct and the Board's motion is

*Denied.*