**LEEDS & NORTHRUP COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD and Arnold Ordman, General Counsel, Acting Through the Regional Director of the Fourth Region, Respondents.**

**No. 15247.**

United States Court of Appeals
Third Circuit.

Argued Nov. 1, 1965.

Decided Feb. 3, 1966.

Robert M. Landis, Philadelphia, Pa. (Galen J. White, Jr., Dechert, Price & Rhoads, Philadelphia, Pa., on the brief), for petitioner.

Lawrence M. Joseph, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Norton J. Come, Asst. Gen. Counsel, on the brief), for respondents.

Before STALEY and FREEDMAN, Circuit Judges, and COHEN, District Judge.

COHEN, District Judge:

The Leeds & Northrup Company (Company), a Pennsylvania corporation, seeks review of the refusal of the Regional Director and General Counsel of the National Labor Relations Board (Board) to grant it, as a charging employer, an evidentiary hearing on its objections to an informal settlement agreement executed between the Regional Director and Leeds & Northrup Employees' Union (Union), under which agreement a complaint of unfair labor practices, initiated by the Company and issued by the Regional Director, was later withdrawn.

The controversy arises out of a plant strike by the Union between November 28th and December 13th, 1962.

The Company, with plants located at Philadelphia and North Wales and a sales office at Fort Washington, all in Pennsylvania, engages in the manufacture and sale of industrial and laboratory type electronic instruments, control systems, heat treatment furnaces, and heat measuring devices. The Union is the collective bargaining representative for certain of Company's employees and it authorized the strike in question.

On January 22, 1963, following termination of the strike, the Company filed charges against the Union, averring it had violated Section 8(b) (1) (A) and 8(b) (2) of the Labor Management Rela-

tions Act,[1] which makes it an unfair labor practice for a Union "to restrain or coerce employees in the exercise of the rights guaranteed in Section 7."[2] The Company alleged that the Union had coerced its employees during the strike, by obstructing ingress and egress to its plants; by threatening employees with violence and loss of employment if they crossed the picket lines; by threatening employees with union fines for crossing the picket lines and for refusing to participate in picketing and strike activities; by imposing and collecting fines against non-strikers in advance of union trials; by the application of dues on account of fines to be imposed, as contrasted to the waiver of dues for strikers; and by the subsequent imposition of fines in amounts equal to such wages as were earned during the strike.

An investigation of the Company's charges was conducted by the Regional Director of the Fourth Region, pursuant to which he concluded on behalf of the Board's General Counsel that a complaint should issue. On May 31, 1963, a complaint was filed against the Union alleging unfair labor practices affecting commerce within the meaning of Section 8 (b) (1) (A) of the Act. A hearing before a trial examiner was set for July 22, 1963, and later rescheduled for September 30, 1963. However, on September 24, 1963, the Regional Director unilaterally ordered the hearing postponed indefinitely.

Thereafter, on March 2, 1964, the Regional Director and the Union entered into an informal settlement agreement, without discussing with, or exhibiting such agreement to, the Company. This agreement does not appear in the record. (Exhibit 1 of the Joint Appendix,

p. 38a, refers to such an agreement in a posted notice to the union employees.) Its terms were not before the Court. On April 29, 1964, the Regional Director and the Union executed another informal settlement agreement. The latter agreement provided for the posting of notices at the plants stating that the Union, in the future, would not obstruct employees or others from free ingress and egress, nor threaten employees with violence or loss of employment if they did not act in concert with the Union. This agreement also provided that its approval by the Regional Director would effect a withdrawal of the complaint and notice of hearing issued theretofore. The Company, although invited to become a party to this agreement refused to do so. Instead, as a charging employer, it filed a motion on May 7, 1964, with the Regional Director, requesting a hearing to be held on the complaint, and a week later filed formal objections to the settlement agreement of April 29, 1964. Regardless, the Regional Director approved the agreement, withdrew the complaint, denied the Company's request for hearing and rejected its objections.

Thereafter, in accordance with the administrative course prescribed by the Board through its Regional Director, the Company filed a request for review with the General Counsel.[3] By letter dated January 11, 1965, the General Counsel advised the Company that he approved the action of the Regional Director in executing the settlement agreement, and withdrawing the complaint. He observed further, that neither the fines levied nor the civil actions instituted to collect them constituted a violation of the Act (citing the Allis-Chalmers case, note 8 infra), and that the unfair labor prac-

---

1. 29 U.S.C. 141 et seq., c. 120 § 1, 61 Stat. 136, June 23, 1947, as amended, 29 U.S.C. § 158(b) (1) (A).

2. 29 U.S.C. § 158(b) (1) (A).

3. By letter of May 22, 1964, the Regional Director denied the relief sought and stated:
 "Pursuant to the National Labor Relations Board Rules and Regulations (Section 102.19) you may obtain a review of this action by filing a request for such review with the General Counsel of the National Labor Relations Board, Washington 25, D.C., and a copy with me. This request must contain a complete statement setting forth the facts and reasons upon which it is based."

tices had ceased. It is this action in denying an evidentiary hearing to the charging employer, which the Company contends is final action of the Board, acting through its General Counsel and Regional Director, that is sought to be reviewed and set aside.

In March, 1965, following the filing of the present petition for review, respondent moved for its dismissal. A full hearing was had before another Panel of this Court, and on April 12, 1965 an order denying the motion was entered without prejudice to its renewal at the argument on the merits of the petition for review.

In defense of its position the respondent Board emphasizes two aspects, contending: (1) in the absence of a final order of the Board, this Court lacks jurisdiction to review the actions of the Regional Director and the General Counsel, and (2) by reason of the informal settlement agreement the practices complained of have been discontinued and are moot, thereby obviating the necessity for a hearing on the complaint or on objections to the agreement.

■■■ As observed by both parties in their briefs and arguments, procedurally, in unfair labor practice matters, the Regional Director may enter into a formal settlement agreement, or an informal one, with the charged party. If a formal agreement is chosen by the Regional Director, the ensuing order, as a form or vehicle of his determination, is reviewable by the Board under the *Act* for its final disposition. However, if an informal agreement is made with the charged party, no order issues from the Board, and the sole route of review, under the rules and regulations of the Board, leads to and ends with the General Counsel. The respondent Board concedes that its final orders are judicially reviewable, but contends that informal agreements of its agents are not reviewable. The petitioning Company insists that respondent's argument is anomalous in that mere choice of the procedural form in these matters can foreclose judicial review, and this despite the absence of minimal standards in the *Act* and in

the Board's own rules and regulations for determining the choice of procedure.

■■■ On the record before us we must disagree with the contentions of respondent. Jurisdiction of this petition obtains under Section 10(f) of the National Labor Relations Act, as amended (49 Stat. 449, 29 U.S.C. 160(f), and Section 10(c) of the Administrative Procedure Act (60 Stat. 237, 5 U.S.C. 1009 (c)). The distinction of formal or informal final disposition under the facts of this case confuses incidence with substance. The absence of a formal order of the Board, which respondent insists is a fatal jurisdictional defect here, does not preclude review by this Court of a final disposition by an administrative agency. As stated by the Court in Columbia Broadcasting System, Inc. v. United States (1942) 316 U.S. 407, at page 424, 62 S.Ct. 1194, at page 1203, 86 L.Ed. 1563.

"We need not stop to discuss here the great variety of administrative rulings which, unlike this one, are not reviewable—either because they do not adjudicate rights or declare them legislatively, or because there are adequate administrative remedies which must be pursued before resorting to judicial remedies, or because there is no occasion to resort to equitable remedies. But we should not for that reason fail to discriminate between them and this case in which, because of its peculiar circumstances, all the elements prerequisite to judicial review are present. The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings * * *."

Absent judicial review, substantial rights of both the Company and its employees under Sections 7 and 8(b) (1) (A), of the Act, 29 U.S.C. § 157 and § 158(b) (1) (A), are adversely affected. To propose that United States Courts of Appeal are powerless, in a jurisdictional

sense, to review quasi-judicial administrative action, either because rules and regulations, or policy, do not provide an adequate avenue of review up to the door of the court, or because of tne absence of precise Congressional articulation for such review, poses inadequacy and injustice which Congress would never intend. It is in such circumstances that the Administrative Procedure Act, 5 U.S.C. 1001, et seq., 1009, makes its greatest contribution. The complex of administrative government designed by Congress was intended to promote expertise in particular areas of extensive activity, as well as unburden the judiciary. However, such design and intention does not confer upon a governmental agency the power to foreclose judicial review.[4] To hold otherwise would do violence to fundamental constitutional concepts of government and sow the seeds of oligarchy in the administrative level of government, thus placing it beyond the reach of the judiciary as a reviewing authority, where contemplated by statutory design, as here. See: 29 U.S.C. § 153(b); and § 160. There are, of course, certain instances where definitive administrative action is final and not within the ambit of judicial review. Gunther v. San Diego, Arizona E. R. Co., No. 27—decided December 8, 1965, 86 S. Ct. 368; Brotherhood of Locomotive Engineers v. Louisville & Nashville R. Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963). But even then, Congress in creating statutory rights affords opportunity for full exploration and determination of merits upon hearing, and final administrative action, although withholding judicial review. True, the Board is exclusively all powerful in its proper sphere. Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 264, 265, 60 S.Ct. 561, 84 L.Ed. 738 (1940). Likewise, the Board and its Agents act in the public interest. However, not exclusively so, or in utter disregard of private interests, be they individual or collective. Such Agency is not autonomously isolated from judicial review by the delegation of its powers and authority to its agents who may elect such informality of procedure as to thwart the statutory machinery. International Union United Auto, etc. Workers of America AFL–CIO v. Scofield, et al., 86 S.Ct. 373, decided December 7, 1965, since argument in this case, and while involving a formal Board order and the issue of intervention, nevertheless points the way to the resolution of the instant problem:

"In prior decisions, this Court has observed that the Labor Act recognizes the existence of private rights within the statutory scheme. (citing auth.) These cases have, to be sure, emphasized the 'public interest' factor. To employ the rhetoric of 'public interest,' however, is not to imply that the public right excludes recognition of parochial private interests. A perusal of the statutory scheme and of the Board's Rules and Regulations is illustrative.

"The statutory machinery begins with the filing of an unfair labor practice charge by a private person, § 10(b); see also, 24 Fed.Reg. 9102 (1959), 29 CFR § 102.9 (1965). When the General Counsel issues a complaint and the proceeding reaches the adjudicative stage, the

4. 5 U.S.C. 1009, June 11, 1946, c. 324 § 10, 60 Stat. 243. "Judicial review of agency action. Except so far as (1) statutes preclude judicial review or (2) action is by law committed to agency discretion.

Rights of review

(a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant stat-

ute, shall be entitled to judicial review thereof.

\* \* \* \* \*

(c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action."

course the hearing will take is in the agency's control, but the charging party is accorded formal recognition: he participates in the hearings as a 'party'; (citations omitted.) he may call witnesses and cross-examine others, may file exceptions to any order of the trial examiner, and may file a petition for reconsideration to a Board order, 28 Fed.Reg. 7973 (1963), as amended, 29 CFR § 102.46 (1965). Of course, if the Board dismisses the complaint, he can obtain review as a person aggrieved, which serves the 'public interest' by guaranteeing that the Board interpretation of the relevant provisions accords with the intent of Congress. (citations omitted.)"

Clearly, once a complaint issues the statutory scheme contemplates Board action. Anything less, such as informal actions of its agents in dismissing such complaint over the objections of the charging party, is arbitrary and capricious. This is not to say that this Court seeks to project itself into the orderly administration of the affairs of the National Labor Relations Board and its Regional Agents. We are not unmindful of the Board's voluminous work load and its meritorious desire for efficiency and dispatch in the disposition of its business at the informal level. Nothing said herein is to be construed as opposed to a continuation of its practices and policy. For this is the genius of the administrative system. But we do conclude that if an amicable adjustment of a labor dispute cannot be brought about through informal negotiations with the consent of all the parties, after the issuance of a complaint, then such informal proceedings must be formalized for Board action within the statutory scheme, thereby creating a record for judicial review.

 Turning now to the central issue here, we are called upon to determine whether the Company was entitled to a hearing on its objections to the in-

formal settlement or compromise, entered into between the Regional Director and the charged party, the Union. As pointed out by this Court in Marine Engineers Ben. Ass'n. No. 13 v. National Labor Rel. Bd., 202 F.2d 546, 549 (3 Cir. 1953) cert. den. 346 U.S. 819, 74 S.Ct. 32, 98 L.Ed. 345 (1953), this is a question of law. On the authority of that case, as well as upon our conception of the statutory design discussed previously, once a complaint has issued, the charging party is entitled to an evidentiary hearing upon its objections to the proposed settlement agreement, be it formal or informal. In *Marine Engineers*, at page 549, the following appears:

"Our best judgment is that the charging party, after complaint is issued, does have some standing. (citing auth.) The Board may refuse to do anything about his complaint as already indicated. But once it does, and once it goes to the extent of filing a complaint, then we think that he is entitled to have a chance to be heard as the Administrative Procedure Act requires. He has a right to object if after hearing he does not like the result. But he certainly has nothing on which to base his objections unless there is a hearing and a record is made so that the court has something to go on." (citing auth.)

Both the Labor Management Relations Act, 29 U.S.C.A. §§ 160(c), 160(f), and the Administrative Procedure Act, 5 U.S.C.A. §§ 1005(b), 1006(d), 1007(b), require a record to be made for a reviewing court.

Unlike the *Marine Engineers*, a formal order of the Board is lacking here. But the opinion in that case is not hinged upon such formality. True, under the Act and the rules and regulations of the Board, General Counsel, after investigation of a charge, may elect not to issue a complaint, and such action is

discretionary.[5] Apparently, the General Counsel considered Company's objective to be the issuance of a new complaint on the question of union fines, or for a full hearing before the Board. This was not the fact. Company at all times sought a hearing before the Regional Director, as was its right (See: Internat'l Union, United Auto, etc., Workers of America, AFL-CIO v. Scofield, supra) on the complaint and on its objections to an informal settlement agreement which effectuated a withdrawal of the complaint. The failure to issue a complaint in the first instance is quite another matter. The case of Contractors Assoc. of Philadelphia & Eastern Pennsylvania v. N. L. R. B., 295 F.2d 526 (3 Cir. 1961), cited by respondent, is not apposite. There the petitioner sought review of General Counsel's refusal to issue a complaint. However, once a complaint has issued, then the situation is within the law as stated in *Marine Engineers*. While other Courts of Appeal have not adhered to the broad scope provided for evidentiary hearing accorded to a charging party once a complaint has issued, see: Textile Workers Union of America AFL-CIO v. N. L. R. B., 111 U.S.App.D.C. 109, 294 F.2d 738 (D.C.Cir.1961); Local 282, Intern. Broth. of Teamsters, etc., v. N. L. R. B., 339 F.2d 795 (2 Cir. 1964), this Court reaffirmed its holding in Piasecki Aircraft Corp. v. N. L. R. B., 280 F.2d 575, 588–589 (3 Cir. 1960), and the Court of Appeals for the Seventh Circuit has approved it also. See: International Union, United Automobile, etc. Workers of America v. N. L. R. B., 231 F.2d 237, 242 (7 Cir. 1956). The case of Insurance Workers v. N. L. R. B., 46 LRRM 2028 (3 Cir. 1960), cert. den. 363 U.S. 806 (1960) was substantially identical to the case *sub judice*. There the charging party's (union) petition for review was dismissed, without the benefit of an opinion, by an order of the Court for lack of jurisdiction. However,

reanalysis of the jurisdictional problem five years removed leads to a different conclusion, in light of expanding judicial concepts giving full range to the Labor Management Relations Act and to fundamental due process.

■ While we are mindful that the General Counsel, and his functionary agent, the Regional Director, acts "independently of any direction, control or review by the Board" (H.Conf.Rep. No. 510, 80th Cong., 1st Sess., p. 37, 1947) such authority as is delegated by the Board, with legislative permission 29 U. S.C. 153(b)(d), pertains to the investigation, issuance, and when so decided, prosecution of complaint. Such delegation cannot carry with it final authority over the ultimate disposition of complaints beneath the Board level. Final disposition of complaint was reposed by Congress in the Board itself. See: Section 3(d) of the Act, 29 U.S.C. § 153(d).

In the instant case, the Regional Director was not acting as "agent" for the General Counsel, but under the direct authority of the Board through its Rule 102.18, 29 CFR. His dismissal of the complaint, acting with the authority and on behalf of the Board, was no less "final" than direct action by his principal, the Board itself. The Board's Rule 102.19, 29 CFR provides for review by the General Counsel of the Regional Director's "refusal to issue" a complaint; but "withdrawal" of a complaint by the Regional Director "on his own motion" under Rule 102.18, which does not provide an avenue of review under the Board's Rules, would usurp the statutory authority of the Board. The vesture of such absolute, unreviewable authority in subordinate administrative agents demands most explicit declaration by Congress to that precise effect, rather than permissive rules designed to assist mechanically implementation of the Act, its administration and enforcement. See:

---

5. 29 U.S.C. § 153(d). There shall be a General Counsel of the Board * * *. He shall have final authority, on behalf of the Board, in respect of investigation of charges and issuance of complaints under section 160 of this title, and in respect of the prosecution of such complaints before the Board * * *.

Greene v. McElroy, 360 U.S. 474, 79 S. Ct. 1400, 3 L.Ed.2d 1377 (1959).

The administrative evil manifest in the Board's regulatory structure in the present case is emphasized by respondent's efforts to distinguish *Marine Engineers*, supra, contending that that case involved "action by the Board", whereas here, the informal settlement agreement required only approval by the General Counsel to effect an unreviewable final disposition. Such a supposition is sheer sophistry. This Court's opinion in *Insurance Workers*, supra, being an unofficially reported *per curiam* order, was not intended to overturn its decision in *Marine Engineers*. For less than two weeks after *Insurance Workers*, the case of *Piasecki Aircraft Corp.*, supra, was argued and *Marine Engineers* then was quoted and cited with approval, 280 F. 2d 575 at pp. 588–589.

In Local Union No. 112, Int. U. Allied Indus. Wkrs., etc. v. Rothman, 209 F.Supp. 295 (D.C.D.C.1962), as here, a complaint had issued and General Counsel entered into a settlement agreement with the charged party, the Union, over the objections of the charging employer without a hearing on its objections; and without the entry of a formal Board order. The District Court held that once a complaint issues, section 3(d) of the Labor Management Relations Act, read in conjunction with section 101.9 of the Board's regulations, requires the Regional Director to afford all parties every opportunity to be heard. But the narrow rule in that Circuit is held to be as declared in *Textile Workers*, supra, that either a hearing be afforded, or the basis for denial be set forth in the record.

 Even the Board's own regulations impose a limitation on the authority of the Regional Director, or General Counsel, to negotiate an informal or formal settlement agreement with a charged party.[6] Considering Section 3 (d) of the Act in the light of section 101.9 of the regulations, it appears that neither Congress nor the Board, by statute or regulation, intended to vest in the Board's agents, the Regional Director and the General Counsel, power and authority to settle complaints after their issuance without the consent of all parties, including the charging party. The authority for the Regional Director's action is said to repose in Rule 102.18, 29 C.F.R., which provides for the withdrawal of a complaint by the Regional Director on his own motion before hearing. This provision is inconsistent with the scheme of the Act, 29 U.S.C. 158, and arbitrarily aborts both administrative and judicial review contrary to law. See Greene v. McElroy, 360 U.S. 474, 508, 79 S.Ct. 1400 (1959). Under the prosecutory phrase of Section 3(d) of the Act, the delegation of discretion to issue or not issue a complaint of unfair labor practice is not improper. But once issued, an adjudicatory phase of the administrative process arises necessitating appropriate avenues of review, both administrative and judicial. The Board, by its own regulations, designed to implement the Labor Management Relations Act, cannot thwart review of its actions, or those of its authorized agents. See: Internat'l Union Auto Workers v. Scofield, et al., supra.

 While it is true that the formal objections to the settlement agreement, which by its terms effected a withdrawal of the complaint, were considered by the Regional Director and rejected, he made factual findings without affording an opportunity to the aggrieved charging party to prove or am-

---

6. C.F.R. Section 101.9, Series 8 Rules and Regulations N.L.R.B.

"Settlement after issuance of complaint (a) Even though formal proceedings have begun, the parties again have full opportunity at every stage to dispose of the case by amicable adjustment and in compliance with the law. Thus, after the complaint has been issued and a hearing scheduled or even begun, the attorney in charge of the case and the regional director afford all parties every opportunity for the submission and consideration of facts, argument, offers of settlement, or proposals of adjustment * * *."

plify its grievances, which opportunity might very well have caused the complaint to prevail and ultimately reach the Board for adjudication as contemplated by the Labor Management Relations Act. The mere consideration on formal pleadings is not tantamount to a hearing on the merits, as contended by respondent. The charges of confiscation of non-striking employees' union dues, as contrasted to rewarding strikers by waiver of dues; the equating of fines with wages earned during the strike; and the "totality of conduct" in the context of mass picketing and threatened violence in an atmosphere of explosive dimensions in evident violation of the Act, were such matters of fact which warranted a full hearing. These are sensitive areas in the labor-management complex which the adjudicatory process provided by the Act was designed to reach. Anything less must in effect be arbitrary and capricious.[7] In some instances, as where only the status of the employee as a member of the union is affected, union fines standing alone may not violate the Act.[8] But to equate union fines with total wages earned by a non-striking employee is the grossest form of economic coercion affecting not only union membership status but also the relationship between the employee and his employer in violation of the Act. Such economic coercion is calculated in design and effect to force an employee to act in concert with the union in future labor-management strife. Congress has imposed strict limitation on compulsory unionism, and the Supreme Court has determined the obligation of union membership to be confined solely to the payment of dues. Radio Officers' Union, etc. v. N. L. R. B., 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954); N. L. R. B. v. General Motors, 373 U.S. 734, 83 S. Ct. 1453, 10 L.Ed.2d 670 (1963); Union Starch & Refining Co. v. N. L. R. B., 186 F.2d 1008, 27 A.L.R.2d 629 (7th Cir. 1951), cert. den. 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed. 617 (1951); Int'l. U. of Elec., Radio & Machine Workers AFL-CIO, Frigidaire Local 801 v. N. L. R. B., 113 U.S.App.D.C. 342, 307 F.2d 679 (1962).

While the issue was different in the recent case of International Union of Operating Engineers Local 49 v. N. L. R. B. (D.C.Cir., Nov. 4, 1965), reported in 353 F.2d 852, 857, the language is singularly apt:

"We think the Board should come to grips with this constantly recurring problem for the protection of the employees as to their section 7 rights and for that of an employer acting in good faith. It would seem that the Board could, in the exercise of its expertise, develop appropriate policy considerations and outline at least minimal standards * * *."

Most appropriate in the instant case is the language of this Court in Marine Engineers, 202 F.2d at page 550:

"In any event, we think the general policy is clear that people who bring charges and succeed in getting complaints to be issued are entitled to a hearing. This, we think,

---

7. Cf: N. L. R. B. v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348 (1941) in which much more careful findings and conclusions by the Board were found inadequate as a basis for the Board's decision than is presented in the instant case.

8. Local 283, UAW, AFL-CIO (Wisconsin Motor Corp.), 145 NLRB No. 109 (1964); Allis-Chalmers Mfg. Co. v. NLRB, No. 14,853 (7 Cir. 1964) on appeal in the Seventh Circuit. [Ed. Note: The 1964 opinion in Allis-Chalmers has since been withdrawn and a new opinion filed, March 11, 1966; see 358 F.2d 656.] Cf: Associated Home Builders of Greater East Bay, Inc., 145 NLRB No. 168 (1964) where section 8(b) (1) (A) was held to be violated despite attempted restitution by the union's treasurer. This case is also on appeal, in the Ninth Circuit.

The case presently before our Court is one in which restitution was made, but only after the complaint of unfair labor practices had issued. Cf: Roberts v. NLRB, 350 F.2d 427 (D.C.Cir. 1965), where fine imposed by union against member filing charges with the NLRB was held an unfair labor practice.

will not seriously interfere with the efficient working of an administrative body. And it will, in our judgment, tend to give the party who feels himself injured and has made a complaint a better chance to have his complaint remedied. We think our conclusion effectuates the policy of the Act and that since it involves a question of law, it in no sense interferes with the expert administrative functions of the Board."

For the reasons assigned, the action of the respondent Board, acting through its Regional Director and General Counsel, will be set aside and the case remanded for proceedings not inconsistent with this opinion.