CHELSEA INDUSTRIES,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, Intervenor for Respondent.

No. 00–1443.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 1, 2001.

Decided April 12, 2002.

Donald H. Scharg argued the cause for petitioner. On the briefs were Steven J. Fishman and Thomas A. Pinch.

Aileen A. Armstrong, Deputy Associate General Counsel, National Labor Relations Board, argued the cause for respondent. With her on the brief were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, and Joan E. Hoyte–Hayes, Attorney. Frederick Havard, Supervisory Attorney, entered an appearance.

James B. Coppess argued the cause for intervenor. With him on the brief was Laurence Gold.

Before: GINSBURG, Chief Judge, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

Under longstanding precedent of the National Labor Relations Board, an employer may not, for a year after a union is certified as the bargaining representative of its employees, withdraw recognition of the union on the ground that it has lost its majority support among the employees. Chelsea Industries, Inc. petitions for review of the Board's decision extending this rule to prohibit an employer from withdrawing recognition after the certification year based upon evidence of less than majority support for the union that the employer acquired during the certification year. We uphold the Board's new policy because it is both rational and consistent with the National Labor Relations Act.

## I. Background

In April, 1993 the Board certified the United Auto Workers as the exclusive collective bargaining representative of Chelsea's employees, and the two parties began to negotiate a collective bargaining agreement in February, 1994, which therefore marked the start of the Union's "certification year." In November, with negotiations still on-going, Chelsea's management received a petition subscribed by 57 of the Company's 89 employees declaring that the "UNDERSIGNED EMPLOYEES ... DO NOT WANT TO BE REPRESENTED BY THE UAW." Neither Chelsea nor the employees informed the UAW of the petition, and the Company continued to negotiate with the Union—from all that appears, in good faith—until February, 1995. The certification year then having ended, Chelsea notified the Union that,

based upon the November petition, it would no longer recognize the UAW as the bargaining representative of its employees.

At the time that Chelsea withdrew recognition from the Union, 51 of the 57 signatories of the petition still worked there and constituted a majority of Chelsea's employees. No outstanding allegations of unfair labor practices tainted Chelsea's withdrawal of recognition.

Immediately after the withdrawal the UAW charged that Chelsea had violated §§ 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) & (5). In March, 1995, when Chelsea increased its employees' wages, the UAW filed another unfair labor practice charge because the Company acted without first having bargained with the Union. The General Counsel issued a complaint encompassing both charges.

An Administrative Law Judge dismissed the complaint, rejecting the General Counsel's and the Union's argument that "an antiunion petition secured within the certification year can never be utilized to withdraw recognition outside the certification year." *Chelsea Indus., Inc.*, 331 N.L.R.B. No. 184, slip op. at 7, 2000 WL 1341469 (Aug. 31, 2000) (ALJ Decision). The ALJ drew upon a line of cases in which the Board had suggested that an employer with evidence the union no longer has the support of a majority of the employees in the bargaining unit lawfully may declare in advance its intention to withdraw recognition from the union at the end of the certification year. *See, e.g., Rock-Tenn Co.*, 315 N.L.R.B. 670, 672, 1994 WL 679090 (1994). The ALJ inferred that such cases also establish the lesser and seemingly included right of an employer with such evidence to withdraw recognition after the certification year without having made an announcement during the year, and that therefore Chelsea lawfully had withdrawn recognition of the UAW. *See Chelsea*, slip op. at 7–8 (ALJ Decision).

The Board reversed the ALJ's ruling, holding that an employer "may not withdraw recognition from a union outside of the certification year based on evidence received within the certification year." *Chelsea*, slip op. at 4. Accordingly, the Board held that Chelsea unlawfully had refused to bargain with the Union, from which it followed that its subsequent unilateral wage increase was unlawful as well. Chelsea now petitions for review of that decision, and the Board crossapplies for enforcement.

## II. Analysis

■ The Board has long held, with exceptions not applicable here, that an employer may not withdraw recognition from a union for at least a year following the union's certification. *See, e.g., Kimberly-Clark Corp.*, 61 N.L.R.B. 90, 92, 1945 WL 8013 (1945) ("Board election and certification must be treated as identifying the statutory bargaining agent with certainty and finality for a reasonable period of time—about a year, under ordinary circumstances"). After bargaining for a year an employer may withdraw recognition based upon actual evidence that a majority of its employees no longer support the union; a petition signed by a majority is such evidence. *See Sullivan Indus. v. NLRB*, 957 F.2d 890, 898 (D.C.Cir.1992). The issue in this case, then, is whether the Board reasonably could hold, consistent with the Act, that an employer may not withdraw recognition based upon evidence secured during the certification year.

■ We defer to the Board's interpretation of the Act if it is reasonable, *see Holly Farms Corp. v. NLRB*, 517 U.S. 392, 401, 116 S.Ct. 1396, 1402–03, 134 L.Ed.2d 593 (1996), and "if the Board's 'explication is not inadequate, irrational, or arbitrary.'" *Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 364, 118 S.Ct. 818, 822, 139 L.Ed.2d 797 (1998). The agency acts un-

reasonably if it departs from established policy without giving a reasoned explanation for the change, *see ConAgra, Inc. v. NLRB,* 117 F.3d 1435, 1443–44 (D.C.Cir. 1997), as Chelsea claims the Board did in this case.

Fifteen years ago the Board ruled that an employer may not withdraw recognition from a union based upon evidence acquired during the certification year. *See United Supermarkets,* 287 N.L.R.B. 119, 120, 1987 WL 90070 (1987) (just as anti-union petition could not "be acted upon by [employer] within the certification year, [employer] cannot subsequently rely on it to justify a more timely withdrawal of recognition"), *aff'd, United Supermarkets v. NLRB,* 862 F.2d 549 (5th Cir.1989). The ALJ declined for two reasons to recognize *United Supermarkets* as controlling here. First, in that case the Board had faulted the employer not only for having withdrawn recognition from the union based upon evidence acquired during the certification year, but also for having acted upon an anti-union petition that was unreliable owing to the employer's outstanding unfair labor practices, *see Chelsea,* slip op. at 8 (ALJ Decision); indeed, in *United Supermarkets* the Board had described the unremedied unfair labor practices as the "[m]ore significant" problem, 287 N.L.R.B. at 120. There were no such allegations pending against Chelsea. *See Chelsea,* slip op. at 8 (ALJ Decision).

Second, the ALJ concluded that the Board's more recent decision in *Rock-Tenn* had undermined *United Supermarkets. See id.* at 7. After all, an employer's right to announce in advance that it intended to withdraw recognition at the end of the certification year would seem to imply that the employer could simply withdraw recognition at the year's end without having issued such an anticipatory announcement. The ALJ recognized that to allow an employer to act upon evidence acquired during the year "had the potential of rendering further bargaining within the year meaningless," *id.* at 8, but he was "not authorized" to depart from what he perceived to be a binding precedent of the Board, *id.*

The Board labors under no such disability, of course, and it resolved the tension between *United Supermarkets* and *Rock-Tenn* by disavowing the later decision and ruling that "an employer may not withdraw recognition from a union outside of the certification year based on evidence received within the certification year." *Chelsea,* slip op. at 4. The Board justified its decision on the grounds that the rule announced in *United Supermarkets* relieves a newly certified union of "exigent pressures to produce hothouse results or be turned out" and decreases an employer's incentive to engage in surface bargaining, *see id.* at 3, the very grounds accepted by the Supreme Court when it first reviewed the Board's decision establishing the irrebuttable presumption that a union enjoys majority support during the certification year, *see Brooks v. NLRB,* 348 U.S. 96, 100, 75 S.Ct. 176, 179–80, 99 L.Ed. 125 (1954). These reasons are equally applicable here: an employer that acquires evidence its employees are dissatisfied with their union may well be reluctant to negotiate, and tempted instead merely to run out the certification year in the expectation that the employees will then oust the union; and a union facing the threat of derecognition based upon dissatisfaction among its members *during the certification year* will again be under pressure to generate "hothouse results." Therefore, we cannot conclude that the Board's prophylactic rule is irrational.

Nor may we fault the Board for not following its own precedent. The Board is at liberty to change its policies as long as it justifies the change with a "reasoned explanation," *Micro Pacific Dev.,*

*Inc. v. NLRB*, 178 F.3d 1325, 1336 (D.C.Cir.1999), and, as we have seen, it has met that obligation here. The Board recognized that a conflict had emerged in its cases with regard to whether an employer may, after the certification year, withdraw recognition from a union based upon evidence the employer had acquired during the certification year. Although not directly in conflict, *Rock-Tenn*—in which the Board upheld an anticipatory withdrawal of recognition—and *United Supermarkets*—in which the Board condemned a withdrawal of recognition deferred until the end of the certification year—could not sensibly co-exist. The Board took this opportunity to relieve the tension, and it did so in favor of the Union rather than the Company. Because, as described above, that resolution was itself reasonable, and the Board gave a "reasoned explanation" for changing (or perhaps merely clarifying) its policy, we reject Chelsea's contention that the Board impermissibly departed from precedent.

■ Equally unavailing is Chelsea's argument that the Board's decision conflicts with § 7 of the Act because it limits the employees' right "to bargain collectively through representatives of their own choosing, and ... to refrain from any or all of such activities." 29 U.S.C. § 157. (In this vein, Chelsea asserts the decision forces its employees "to accept the UAW as their bargaining representative simply because they did not wait until February 3, 1995 to sign the petition.") But that is the inevitable by-product of the Board's striking a balance between stability and employee free choice in labor relations, as it frequently must do. *See, e.g., Terrace Gardens Plaza, Inc. v. NLRB*, 91 F.3d 222, 228 (D.C.Cir.1996) ("contract bar rule"). Insofar as the decision makes it more difficult for the employees to terminate their representation by the Union, the burden is no greater than is entailed in the Board's policy that an employer may not withdraw recognition during the certification year, which policy has been recognized as valid under the Act for nearly fifty years. *See Brooks*, 348 U.S. at 100, 75 S.Ct. 176.

■ Finally, we reject out of hand Chelsea's rather silly suggestion that the Board's decision is unreasonable because it conflicts with a memorandum issued by the General Counsel's Division of Advice in response to an inquiry from a Regional Director considering whether to pursue the complaint in a similar case then pending. The General Counsel investigates and prosecutes unfair labor practices before the Board, *see* 29 U.S.C. § 153(d); he must also defend the decisions of the Board on review, regardless whether the Board adopted the view he expressed as a party before it. *See* National Labor Relations Bd., Organization & Functions § 202, 32 Fed Reg. 9588, 9588 (1967). It is of no moment, therefore, what was the General Counsel's understanding of the case law before the present decision issued, and the court will take no note of it.

■ Because Chelsea's withdrawal of recognition was unlawful, it necessarily follows that Chelsea violated the Act by unilaterally raising its employees' wages. As Chelsea implicitly recognizes by its silence, an employer may not alter its employees' wages without first having bargained with their union and reached either an agreement or an impasse. *See* 29 U.S.C. § 158(d); *Daily News of Los Angeles v. NLRB*, 73 F.3d 406, 410 (D.C.Cir.1996).

### III. Conclusion

For the reasons stated above, we deny Chelsea's petition for review and grant the Board's cross-application for enforcement.

*So ordered.*