Ramiro LOPEZ, et al., Petitioners

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 14-1095

September Term, 2015

United States Court of Appeals,
District of Columbia Circuit.

Filed: 07/15/2016

Aaron Becket Solem, Attorney, Glenn Matthew Taubman, National Right to Work Legal Defense Foundation, Springfield, VA, for Petitioners.

Usha Dheenan, Linda Dreeben, Deputy Associate General Counsel, John H. Ferguson, Associate General Counsel, Elizabeth Ann Heaney, Esquire, Attorney, Joel Abraham Heller, National Labor Relations Board (NLRB), Appellate and Supreme Court Litigation Branch, Washington, DC, for Respondent.

Before: Henderson, Srinivasan, and Millett, Circuit Judges.

## JUDGMENT

Per Curiam

This petition for review was considered on the record from the National Labor Relations Board and on the briefs and arguments of the parties. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. 36(d). For the reasons stated below, it is

**ORDERED and ADJUDGED** that the petition for review be dismissed.

Latino Express provides transportation services in the Chicago area, including public school bus routes and charter trips for the general public. In 2010 and 2011, when Latino Express's employees attempted to organize, the National Labor Relations Board found that Latino Express had repeatedly violated the National Labor Relations Act by discriminating against employees for their organizational activities, creating the impression that employees were under surveillance, and threatening to discharge employees and close the facili-

ty because of union-organizing efforts. *See Latino Express, Inc.*, 361 NLRB No. 137 (2014).

Despite that extensive employer misconduct, the employees voted to organize, and the International Brotherhood of Teamsters, Local 177 (the "Union") was certified as the collective-bargaining representative of all full-time and regular part-time drivers at Latino Express on April 18, 2011. Bargaining commenced in June, but ten months and roughly twenty-two bargaining sessions later there still was no collective bargaining agreement.

In March 2012, less than a year after the Union was certified and while bargaining was ongoing, a Latino Express employee, Ramiro Lopez, spoke with other employees about ending Union representation. Lopez also enlisted an attorney, Matthew Muggeridge of the National Right to Work Legal Defense Foundation, to help him. Lopez and two other employees then began collecting signatures for a decertification petition. On April 19—one year and one day after the Union had been certified—Lopez filed a decertification petition with the Board. Five days later, Muggeridge informed Latino Express that a decertification petition signed by a majority of employees had been filed. Latino Express notified the Union that it was withdrawing recognition immediately.

Between March and May 2012, the Union filed five unfair labor practice charges against Latino Express: two charges of failing to bargain in good faith, two of unilaterally changing the terms and conditions of employment, and one of unlawfully withdrawing recognition from the Union. Each charge was assigned its own Board docket number.

The Acting General Counsel ordered a hearing. At the start of the hearing, Muggeridge filed a motion to intervene on behalf of Lopez and approximately thirty other employees (collectively, "Lopez"). The administrative law judge denied the motion, reasoning that Lopez's dissatisfaction with the Union was not relevant to the unfair labor practice case, which would address only "whether [Latino Express] bargained in bad faith, made unilateral changes or unlawfully withdrew recognition from the Union." J.A. 44–46. Employee sentiment could instead be "vindicated through the Board's representation case procedures," *id.* at 46, under which the petition could lead to a Board investigation, and potentially to a hearing before an ALJ and an election directed by the Board, *see* 29 U.S.C. § 159(c). The Board later rejected Lopez's motion to appeal the ALJ's denial of intervention.

The ALJ then issued a decision in favor of the Acting General Counsel, which the Board affirmed and adopted in full on May 31, 2014. The Board found that Latino Express had violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (5), by failing to bargain in good faith, unilaterally changing terms and conditions of employment, and unlawfully withdrawing recognition from the Union. The Board ordered a comprehensive remedy, requiring Latino Express, as relevant here, to recognize the Union and bargain for a reasonable period of time, and to cease and desist from unfair labor practices.

Both Latino Express and Lopez filed petitions for review, and the Board filed a cross-application for enforcement. While those appeals were pending, Latino Express and the Union, as the charging party in the unfair labor practice proceeding, reached a settlement with the Board. In the settlement agreement, Latino Express "waiv[ed] all defenses to the entry of the judgment" and agreed to "comply with the affirmative provisions of the Board's [May 31, 2014] Order." Settlement Agreement at

2, ECF No. 1595389-2, *Lopez v. NLRB*, No. 14-1095 (D.C. Cir. Jan. 26, 2016). The agreement expressly identified the settled unfair labor practice charges by docket number, including each charge addressed by the Board's Order.

In light of their settlement, the Board and Latino Express filed a joint motion to dismiss Latino Express's petition for review and the Board's cross-application for enforcement, which this court granted. Order, ECF No. 1598339, *Lopez v. NLRB*, No. 14–1095, 2016 WL 1272884 (D.C.Cir. Feb. 10, 2016).

The settlement between the Board, Latino Express, and the Union has mooted Lopez's petition for review of the denial of intervention. "[T]he judicial power extends only to cases or controversies," *Powell v. McCormack*, 395 U.S. 486, 496 n.7, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), and it is well established that parties' voluntary settlement of their entire dispute renders a case moot, thereby depriving the court of jurisdiction to decide the appeal or petition for review. *See, e.g., Buck's Stove & Range Co. v. American Fed'n of Labor*, 219 U.S. 581, 581, 31 S.Ct. 472, 55 L.Ed. 345 (1911) (per curiam) ("[T]he cases had become purely moot because of the settlement between the parties of every material controversy which the record presented[.]"); *In re United States*, 927 F.2d 626, 627 (D.C.Cir. 1991) (agreeing that a case the government and plaintiff settled before appeal was moot). Only the parties to the dispute need to consent to settlement; no outside entity can prevent them from resolving their differences. *See, e.g., Local No. 93, Int'l Ass'n of Firefighters, AFL–CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 528–529, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986) ("It has never been supposed that one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from

settling their own disputes and thereby withdrawing from litigation."); *see also In re Idaho Conservation League*, 811 F.3d 502, 515 (D.C.Cir.2016) ("Even an intervenor would lack the power to block the order on consent by withholding their consent.") (citation omitted).

An unfair labor practice case is, at bottom, a dispute between the Board and the charged party. The Board has the exclusive power to "ascertain[ ] and prevent[ ]" unfair labor practices. *Amalgamated Utility Workers v. Consolidated Edison Co. of New York, Inc.*, 309 U.S. 261, 264, 60 S.Ct. 561, 84 L.Ed. 738 (1940); *see* 29 U.S.C. § 160(a) ("The Board is empowered * * * to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce."). No other party can prosecute an unfair labor practice charge, or challenge the Board's decision not to do so. *See, e.g., Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ("[T]he Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint."). For this reason, only "[t]he charged party is a necessary signatory to any informal or formal settlement" with the Board. NLRB Casehandling Manual, Part 1, Unfair Labor Practice Proceedings § 10134.1 (February 2016). Not even the charging party's consent is required. *See id.* § 10134.2 (While "it is desirable to have the charging party enter into a settlement," "[i]f the charging party is unwilling * * * the Regional Director or the Administrative Law Judge may approve a unilateral settlement."); *see also Retail Clerks Union 1059 v. NLRB*, 348 F.2d 369, 370 (D.C.Cir.1965) (The charging party is "not an indispensable party before the Board, and therefore could not exercise a veto power over the proposed settlement."); *Textile Workers Union of America v. NLRB*, 294 F.2d 738, 739 (D.C.Cir.1961) ("[S]ince the selection of [unfair labor

practice] cases to be pursued to the end through adversary proceedings is a responsibility of the Board," the court "assum[ed] that the charging party may not veto a settlement arranged between the General Counsel and a respondent to a Board complaint.").*

Lopez thus has no cognizable legal interest in or ability to block the conclusive resolution of the unfair labor practice proceeding. Lopez does not dispute that the settlement explicitly disposed of every charge raised in Latino Express's petition and the Board's cross-application to this court. *See* Oral Arg. Tr. 6–7. Lopez nevertheless argues that intervention should have been allowed in order to demonstrate the validity of the signatures on the decertification petition and thereby sustain Latino Express's withdrawal of recognition in 2012.

But the validity of those signatures and Latino Express's withdrawal of recognition were specifically adjudicated adversely to Latino Express in the Board proceeding, *see* J.A. 347–350, the appeal of which has been conclusively settled, *see* Settlement Agreement at 2, ECF No. 1595389-2. There simply is no live case in which Lopez can intervene to litigate those settled issues. *See In re Idaho Conservation League*, 811 F.3d at 515 (would-be intervenor cannot block settlement); *Energy Transportation Group, Inc. v. Maritime Admin.*, 956 F.2d 1206, 1210 (D.C.Cir. 1992) ("We first dismiss as moot the appeals from the district court orders denying intervention. The complaints in the underlying litigation were dismissed by agreement of the parties pursuant to the settlement, so there is no longer any action in which to intervene."); *Democratic National Committee v. Federal Election Comm'n*, 1999 WL 728351 (D.C.Cir.1999) (observing that the settlement of an underlying suit moots an appeal of the denial of intervention) (citing *Horn v. Eltra Corp.*, 686 F.2d 439 (6th Cir.1982)).

Nor could anything come from an after-the-fact validation of those signatures. The Board's determination that Latino Express unlawfully withdrew recognition rested on alternative and independent grounds: According to the Board, as a matter of labor policy, an employer may not withdraw recognition from a union based on a decertification petition compiled during the certification year. On that basis—as to which any dispute has been settled—the Board's finding of unlawful withdrawal of recognition would stand regardless of the signatures' validity. Moreover, the requirement that petition signatures be authenticated ensures that an *employer* independently verifies the union's loss of majority support before withdrawing recognition. *See Levitz Furniture Co. of the Pacific*, 333 NLRB 717, 726 (2001) ("[W]e anticipate that as a result of our decision today, employers will be likely to withdraw recognition only if the evidence before them clearly indicates that unions have lost majority support."). Thus, whether the signatures are actually valid or not has no bearing on the now-settled question of whether

---

* In *Retail Clerks* and *Textile Workers*, we held that a charging party that objected to a settlement between the Board and the charged party could not block the settlement, but nevertheless remanded to the Board to afford the charging party "either (1) a reasonable opportunity * * * to be heard on its objections or (2) a presentation on the record of reasons for acceptance of the stipulation as the basis for the order notwithstanding (its) objections."

*Retail Clerks*, 348 F.2d at 370; *see Textile Workers*, 294 F.2d at 740. That was consistent with the special legal status afforded the charging party under federal labor law. *See Textile Workers*, 294 F.2d at 741 (noting that the charging party "ha[s] a substantial part in assisting the Board in fulfilling its public responsibilities"). As Lopez is not a charging party, no such remand would be warranted here.

Latino Express committed an unfair labor practice by unlawfully withdrawing recognition before first authenticating the signatures.

Lopez also argues that intervention would allow a challenge to the affirmative bargaining order requiring Latino Express to bargain with the Union for at least six months, which the Board imposed as part of its remedy in this case. But even if Lopez were correct that the withdrawal of recognition finding was in error, the affirmative bargaining remedy is independently supported by the additional unfair labor practices found by the Board—refusal to bargain in good faith and unilateral changes to the terms and conditions of employment—none of which Lopez challenges. *See* Oral Arg. Tr. 17, 18. Indeed, "[f]or over 50 years, an affirmative bargaining order has been the standard Board remedy for an employer's unlawful refusal to bargain with a union which, as of the date of the refusal, enjoys the status of a * * * collective-bargaining representative." *Williams Enterprises*, 312 NLRB 937, 940 (1993).

Finally, Lopez is wrong to argue that recognizing mootness somehow violates the right of employees "to either choose or reject Union representation," Oral Arg. Tr. 5. *See* 29 U.S.C. § 157 (employees have the right "to bargain collectively through representatives of their own choosing"). There is nothing to stop Lopez from pursuing representation proceedings based on a decertification petition after the bargaining order expires. Oral Arg. Tr. 20; *see* 29 U.S.C. § 159(c). A temporary delay in that process during the affirmative-bargaining period "is the inevitable by-product of the Board's striking a balance between stability and employee free choice in labor relations, as it frequently must do." *Chelsea Industries, Inc. v. NLRB*, 285 F.3d 1073, 1077 (D.C.Cir.2002); *see also NLRB v. Gissel Packing Co.*, 395 U.S. 575, 613, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) ("[A] bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed.") (internal quotation marks omitted). "[T]he burden is no greater than is entailed in the Board's policy that an employer may not withdraw recognition during the certification year, which policy has been recognized as valid under the Act for nearly fifty years." *Chelsea Industries*, 285 F.3d at 1077.

Because the case is moot, there is no proceeding in which Lopez could intervene. There is also no longer a viable legal avenue through which further review in this case could redress Lopez's claims. Accordingly, the petition for review is dismissed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a).