IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AMERICAN FEDERATION OF TEACHERS, LOCAL 1950, | ) ) | No. 81322-6-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | |
| STATE OF WASHINGTON, PUBLIC EMPLOYMENT RELATIONS COMMISSION, a Washington State Agency; and SHORELINE COMMUNITY COLLEGE, | ) ) ) ) ) ) | PUBLISHED OPINION |
| | ) | |
| Respondents. | ) | |

BOWMAN, J. — The American Federation of Teachers, Local 1950 (Union), appeals the decision of the Public Employment Relations Commission (Commission) to defer consideration of the Union's unfair labor practice (ULP) complaints against Shoreline Community College (College) until after an arbitrator resolves the College's affirmative defense of waiver by contract. Because the Commission has broad authority to determine when deferral to arbitration is appropriate, and a substantial question of contract interpretation exists that could influence or control the outcome of the statutory ULP claims, we affirm.

FACTS

The Union and the College began negotiating a new collective bargaining agreement (CBA) in 2017. A central issue in the bargaining process was how to compensate faculty for past wage increases that had been authorized but unfunded by the legislature since 2008. The College estimated it could contribute $311,000 from its reserve fund, but this amount did not cover summer quarter costs. The Union agreed to reduce its budget for sabbatical leave by $200,000 and add that money to the increment wages pool.

According to the Union, it communicated its strong desire to the College that "those who had missed the most in terms of unfunded increments would be able to get more [of] a share of the money." This required calculating each teacher's increase using a "weighted average" of workload, number of quarters worked, and several other factors. From the Union's perspective, the College appeared to accept the Union's methodology and was more concerned about the total number of dollars than the manner of distribution.

In negotiating the wage increases, the Union relied heavily on the work of its treasurer and College faculty member, Brad Fader. Fader taught accounting at the College and had 25 years of experience negotiating contracts and running financial analyses for the Boeing Company. Fader developed a method for calculating distribution of the pool of money and provided it to the College. He

also drafted language related to the unfunded wage increments that the parties later incorporated into the CBA as "Appendix A."[1]

The parties included language in the CBA requiring the College to "make available to the [Union] information needed to assist the [Union] in performing its representative responsibilities," as well as standard waiver and integration clauses. For example, the CBA "constitutes the negotiated agreement between the [College] and the [Union] and supersedes any agreements or understandings, whether oral or written, between the parties." And the "Agreement expressed herein in writing constitutes the entire Agreement between the parties, and no oral statement shall add to or supersede any of its provisions." Finally, the CBA provided that any allegation that the College violated a section or provision of the agreement is subject to arbitration.

The parties executed the new CBA in May 2017 with an effective date of June 1, 2017. Several times between May and the end of June 2017, Fader asked the College to provide him with details about faculty workloads so he could complete his distribution calculations. The College did not give Fader the information. Instead, it told him it would release its calculations by the end of August.

When the College released its calculations in August 2017, Fader recognized they did not align with his methodology. According to the Union, the calculations used by the College "grossly underfunded" the pool, did not include

---

[1] The first paragraph of Appendix A addressed only "the current situation that the parties were faced with (funding increments)." The second paragraph included Fader's "long-term" and more detailed provision for future increase calculations because it would be an "_evolving_ formula" used over time.

summer quarter, "shortchanged long-term faculty increments," and "did not have any sort of weighting . . . at all, certainly not for course loads." And part-time faculty members received compensation for certain work, while full-time faculty did not.

A series of communications between the Union and the College in early September 2017 did not resolve the problem. The College insisted it was correctly implementing the wage increases under the CBA. It asserted the Union was not accounting for benefit costs that the College had to deduct from the faculty payments, which the Union believed had been part of the initial funding. The College also explained that it did not include compensation for the summer quarter because the CBA did not mention summer. The Union asserted that the College used a method to calculate back pay that the Union did not contemplate or agree to during negotiations. The Union also complained that the College's two-month delay in releasing its calculations led to the faculty receiving back pay before the Union could address the discrepancies.

Communication between the two groups deteriorated. The "Joint Union Management Committee" took up the issue but could not resolve the dispute, so on October 23, 2017, the Union filed a ULP complaint before the Commission.

A Commission manager determined the Union raised viable ULP claims against the College and characterized them as (1) refusal to bargain and breach of good faith bargaining "over the decision of using a new methodology of calculating increased compensation and the total amount of increased compensation owed," (2) refusing to provide relevant information concerning data

related to the compensation distribution, and (3) unilaterally changing the amount of compensation and methodology for distribution without providing an opportunity to bargain. The first two claims are statutory ULP complaints in violation of RCW 28B.52.073(1)(a) and (e). The third claim is a contractual dispute subject to arbitration under the terms of the CBA. The manager called for an answer from the College and assigned the matter to a hearings examiner (Examiner).

The College asserted an affirmative defense of waiver by contract to all of the Union's claims.[2] It argued that the Union's claims all related to conduct authorized under the CBA, and that interpretation of the parties' contractual obligations should be resolved through the CBA's grievance and arbitration process. The College moved to dismiss the claims for lack of jurisdiction, or defer them all to an arbitrator.

The Examiner denied the College's motion, reasoning that claims (1) and (2) are statutory claims subject to Commission jurisdiction and not appropriate for deferral. The Examiner concluded that while claim (3) is a unilateral change allegation characterized as a contract dispute "appropriate" for arbitration, "the Commission does not bifurcate [ULP] complaints where statutory violations are also alleged."

After a four-day hearing with testimony and posthearing briefing, the Examiner ruled for the Union. While the Examiner did not directly address the

---

[2] No ULP violation exists when a party acts or makes changes in a manner authorized by the contract or consistent with established practice. See Pub. Sch. Emps. of Wash., N. Franklin Chapter v. N. Franklin Sch. Dist., No. 12665-U-96-3022, 1998 WL 84382, at *1-*5 (Wash. Pub. Emp't Relations Comm'n Feb. 1, 1998).

College's waiver-by-contract argument, her ruling appears to reject the defense because "the [U]nion and [College] never had a meeting of the minds in regard to compensation for missed increments."

The College appealed the Examiner's ruling to a three-member panel of the Commission. In a split decision, the Commission vacated the Examiner's ruling and deferred the matter to arbitration to resolve the College's "colorable" waiver-by-contract defense to all three of the Union's claims. One member dissented, arguing the Commission's ruling departs from its policy to defer only unilateral change allegations to arbitration, not statutory ULP claims.

The Union appeals.

ANALYSIS

The Union argues the Commission wrongly deferred its statutory ULP claims to arbitration. The College contends that the Commission properly exercised its discretion to withhold consideration of the Union's ULP claims until an arbitrator determines whether the claims were waived by contract. We agree with the College.

When reviewing a decision of the Commission, we look to the findings and conclusions of the Commission, not those of the Examiner. Int'l Ass'n of Firefighters, Local 469 v. Wash. Pub. Emp't Relations Comm'n, 38 Wn. App. 572, 575-76, 686 P.2d 1122 (1984). The Examiner's findings are part of the record, however, and we may weigh them in considering the evidence supporting the Commission's decision. Pasco Police Officers' Ass'n v. City of Pasco, 132 Wn.2d 450, 459, 938 P.2d 827 (1997).

6

Though we may substitute our own determination for that of the Commission in reviewing questions of law, we give great weight and substantial deference to the Commission's interpretation of the Public Employees' Collective Bargaining Act, RCW 41.56.010-.900, RCW 41.06.150. Teamsters Local 839 v. Benton County, 15 Wn. App. 2d 335, 343, 475 P.3d 984 (2020). Along with Washington law, we look to National Labor Relations Board (NLRB) decisions construing the National Labor Relations Act, 29 U.S.C. §§ 151-169. Pasco Police, 132 Wn.2d at 458. Federal precedent is persuasive, but not controlling. Nucleonics All., Local Union 1—369, Oil, Chem., & Atomic Workers Int'l Union, AFL-CIO v. Wash. Pub. Power Supply Sys., 101 Wn.2d 24, 32-33, 677 P.2d 108 (1984).

We review an appeal from the Commission's decision involving a ULP claim in accordance with the Administrative Procedure Act (APA), chapter 34.05 RCW. Lincoln County v. Pub. Emp't Relations Comm'n, 15 Wn. App. 2d 143, 150-51, 475 P.3d 252 (2020), review denied, 197 Wn.2d 1003, 483 P.3d 774 (2021). Under the APA, we may grant relief from an agency order for any one of nine reasons set forth in RCW 34.05.570(3)(a)-(i).

The Union argues that we should reverse the Commission's decision because it is (1) inconsistent with WAC 391-45-110(3) and does not provide a rational basis for departing from the rule in violation of RCW 34.05.570(3)(h), (2) arbitrary and capricious in violation of RCW 34.05.570(3)(i), (3) unsupported by substantial evidence in violation of RCW 34.05.570(3)(e), and (4) a

misinterpretation of the law in violation of RCW 34.05.570(3)(d).[3]  As the party challenging the agency action, the Union has the burden of proving the invalidity of the Commission's decision.  RCW 34.05.570(1)(a).

(1)  WAC 391-45-110(3)

The Union claims the Commission's decision to defer its claims to arbitration "is inconsistent with WAC 391-45-110(3), and the Commission failed to demonstrate a rational basis for this inconsistency."  We disagree.

Commission decisions " 'are accorded extraordinary judicial deference, especially in the matter of remedies.' "  Teamsters Local 839, 15 Wn. App. 2d at 349 (quoting Pasco Hous. Auth. v. Wash. Pub. Emp't Relations Comm'n, 98 Wn. App. 809, 812, 991 P.2d 1177 (2000)).  And we defer to the Commission's interpretation of its rules, so long as the interpretation is reasonable.  See Chelsea Indus., Inc. v. Nat'l Labor Relations Bd., 285 F.3d 1073, 1075 (D.C. Cir. 2002).  The Commission acts unreasonably "if it departs from established policy without giving a reasoned explanation for the change."  Chelsea Indus., 285 F.3d at 1075-76 (D.C. Cir. 2002) (citing ConAgra, Inc. v. Nat'l Labor Relations Bd., 117 F.3d 1435, 1443-44 (D.C. Cir. 1997)).

To interpret an administrative or agency rule like WAC 391-45-110(3), we use the same standards of construction as when reviewing issues of statutory construction.  Dep't of Licensing v. Cannon, 147 Wn.2d 41, 56, 50 P.3d 627 (2002).  That is, we conduct a de novo review, with our fundamental objective

---

[3] The Union does not support its fourth claim with authority in its brief.  See RAP 10.3(a)(6).  We need not consider arguments that are not developed in the briefs and for which a party has not cited authority.  Bercier v. Kiga, 127 Wn. App. 809, 824, 103 P.3d 232 (2004).

being to ascertain and give effect to the legislature's intent. <u>Columbia Riverkeeper v. Port of Vancouver USA</u>, 188 Wn.2d 421, 432, 395 P.3d 1031 (2017). We begin with the plain meaning of the statute. <u>City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604</u>, 119 Wn.2d 373, 380, 831 P.2d 738 (1992). We consider the text of the provision, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. <u>Columbia Riverkeeper</u>, 188 Wn.2d at 432. If the meaning of the statute is plain on its face, then we must give effect to that meaning as an expression of legislative intent. <u>Columbia Riverkeeper</u>, 188 Wn.2d at 435. And we read statutes in a manner to avoid rendering any portion meaningless or superfluous. <u>Stroh Brewery Co. v. Dep't of Revenue</u>, 104 Wn. App. 235, 239-40, 15 P.3d 692 (2001).

Under RCW 41.58.020, the Commission has jurisdiction to adjudicate all ULP claims, whether statutory or contractual. And the legislature has empowered the Commission to "make, amend, and rescind" rules and regulations as may be necessary to carry out these functions in a manner prescribed by the APA. RCW 41.58.050. But the legislature has also expressed a strong preference that parties resolve contractual disputes through the method agreed upon in their contract:

> Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing [CBA].

RCW 41.58.020(4).

To carry out the legislature's intent, the Commission adopted WAC 391-45-110(3), showing its preference to defer contractual disputes to arbitration. See Int'l Ass'n of Fire Fighters, Local 469 v. City of Yakima, No. 7900-U-89-1699, 1991 WL 733702, at *5 (Wash. Pub. Emp't Relations Comm'n Jan. 1, 1991) (quoting WAC 391-45-110(3)(a)(i)). WAC 391-45-110(3) provides:

> The [Commission] may defer the processing of allegations which state a cause of action under subsection (2)[4] of this section, pending the outcome of related contractual dispute resolution procedures, but shall retain jurisdiction over those allegations.
>     (a)  Deferral to arbitration may be ordered where:
>     (i)  Employer conduct alleged to constitute an unlawful unilateral change of employee wages, hours or working conditions is arguably protected or prohibited by a [CBA] in effect between the parties at the time of the alleged unilateral change;
>     (ii)  The parties' [CBA] provides for final and binding arbitration of grievances concerning its interpretation or application; and
>     (iii)  There are no procedural impediments to a determination on the merits of the contractual issue through proceedings under the contractual dispute resolution procedure.

The Union argues WAC 391-45-110(3)(a) "narrows the scope of the type of [ULP] charges which may be deferred to arbitration" by limiting deferral to only unilateral change allegations.[5]  According to the Union, the Commission erred in deferring all of its claims to arbitration because "two of the three ULPs that the Commission identified[6] were not unilateral change allegations."  The Union is

---

[4] Subsection (2) of WAC 391-41-110 outlines the requirement that "[i]f one or more allegations state a cause of action for [ULP] proceedings before the [C]ommission, a preliminary ruling summarizing the allegation(s) shall be issued and served on all parties."  The Commission manager followed this procedure before submitting the Union's claims to the Examiner.

[5] A unilateral change occurs where " 'without bargaining to impasse, [an employer] effects a unilateral change of an existing term or condition of employment.' "  Intermountain Rural Elec. Ass'n v. Nat'l Labor Relations Bd., 984 F.2d 1562, 1566 (10th Cir. 1993) (quoting Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. Nat'l Labor Relations Bd., 501 U.S. 190, 198, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991)).

[6] Failure to provide information and failure to bargain in good faith.

correct that WAC 391-45-110(3)(a)(i) authorizes the Commission to defer to arbitration all claims that an employer unilaterally changed a term in a CBA. Indeed, such a claim will always be appropriate for arbitration, as it is necessarily resolved by interpreting the language of a CBA. See RCW 41.58.020(4); WAC 391-45-110(3)(a). And " '[a]rbitrators and courts are still the principal sources of contract interpretation.' " Nat'l Labor Relations Bd. v. Strong, 393 U.S. 357, 360-61, 89 S. Ct. 541, 21 L. Ed. 2d 546 (1969). But we reject the Union's contention that the WAC limits deferral of contractual disputes to only unilateral change allegations.

Under the plain language of WAC 391-45-110(3), the Commission may "retain jurisdiction" over but "defer"[7] alleged ULP violations "pending the outcome of related contractual dispute resolution procedures" in arbitration. This broad language is not limited to unilateral change allegations, and reflects the Commission's policy to encourage arbitration if "a substantial question of contract interpretation exists which could influence or control the outcome of the [ULP] case." Wash. Educ. Ass'n v. Finley Sch. Dist., No. 15859-U-01-4030, 2002 WL 31317730, at *3 (Wash. Pub. Emp't Relations Comm'n Aug. 14, 2002) (quoting WAC 391-45-110(3)(a)(i)).[8] Restricting arbitration to only questions of whether an employer unilaterally changed a term of the CBA goes against the plain language of WAC 391-45-110(3), and deviates from the legislature's intent to

---

[7] We give "defer" its ordinary meaning of "delay" in this context. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 591 (2002).

[8] See also Fire Fighters, Local 469, 1991 WL 733702, at *5 (Commission may follow its discretionary policy to defer a matter to arbitration "where it can be anticipated that the delay in processing of the [ULP] case will yield an answer to the question that is '**of interest to the Commission to resolve the pending** [**ULP**].' ").

11

promote resolution of contractual disputes through the method agreed on by the parties as well as the Commission's policy to defer contractual disputes to arbitration.

Here, the Commission determined that the Union's claim alleging the College breached its good faith bargaining obligation arises from the "same facts" as the allegation that the College unilaterally changed the method of calculating the increased compensation, and that both claims "depend for their resolution on interpretation of the [CBA], a task assigned by the parties to an arbitrator." And the parties included in their CBA a provision obligating the College to supply the Union with information, which "furnishes a clear contractual basis for deferral" of the Union's claim of refusal to provide information.[9] As a result, the Commission retained jurisdiction over the Union's statutory ULP claims, but delayed considering them until the "colorable 'waiver by contract' issues [could] be resolved in the first instance through the parties' arbitration processes." " '[D]eferral is not akin to abdication. It is merely the prudent exercise of restraint, a postponement of the use of the [Commission]'s processes to give the parties' own dispute resolution machinery a chance to succeed.' " Hammontree v. Nat'l Labor Relations Bd., 925 F.2d 1486, 1497 (D.C. Cir. 1991)[10] (quoting United Techs. Corp., 268 N.L.R.B. 557, 560 (1984)). The Commission's decision is consistent with the plain language of WAC 391-45-110(3).[11]

---

[9] The deferral decision does not evaluate the merits of the defense; the arbitrator makes that determination. Cowlitz County Deputy Sheriffs' Guild v. Cowlitz County, No. 23831-U-11-6083, 2012 WL 5197263, at *2 (Wash. Pub. Emp't Relations Comm'n Oct. 12, 2012).

[10] First alteration in original.

[11] The decision also enhances judicial efficiency if an arbitrator concludes the CBA governs the parties' disputes.

(2)  Arbitrary and Capricious

The Union argues that the Commission acted arbitrarily and capriciously in deferring its statutory claims to arbitration because the Commission "fails to explain its decision's inconsistency with [Commission] precedent."

The Commission makes an arbitrary and capricious decision if it is willful, without reason, and without consideration and in disregard of facts and circumstances.  State v. Rowe, 93 Wn.2d 277, 284, 609 P.2d 1348 (1980).  A decision is not arbitrary and capricious when there is room for two opinions, even if it appears the Commission reached an erroneous conclusion.  Rowe, 93 Wn.2d at 284.  A party seeking to show an action is arbitrary and capricious "must carry a heavy burden."  Pierce County Sheriff v. Civil Serv. Comm'n of Pierce County, 98 Wn.2d 690, 695, 658 P.2d 648 (1983).

The Union cites two cases in support of its argument that the Commission's decision departed from its precedent, International Union of Operating Engineers, Local 609 v. Seattle School District, No. 12335-U-96-2918, 1997 WL 24812 (Wash. Pub. Emp't Relations Comm'n Jan. 10, 1997), and Bremerton Patrolmen's Ass'n v. City of Bremerton, No. 12707-U-96-3045, 1998 WL 86012 (Wash. Pub. Emp't Relations Comm'n Jan. 1, 1990).

In Operating Engineers, a union complained to the Commission that the school district violated RCW 41.56.140(1) and (4) (ULPs for public employers enumerated) by refusing to provide information about employees subject to discipline while their grievances were pending in arbitration.[12]  Operating Eng'rs,

_____

[12] The parties' CBA defined when the district must provide information to the union. Operating Eng'rs, 1997 WL 24812, at *2.

13

1997 WL 24812, at *1.  The district moved to dismiss the union's statutory claim because "submission of the grievances to arbitration deprives the Commission of jurisdiction."  Operating Eng'rs, 1997 WL 24812, at *4.  The Commission rejected the contention that a ULP complaint "must be dismissed simply because [the underlying employees' grievances] have been taken to arbitration."  Operating Eng'rs, 1997 WL 24812, at *5.[13]  Contrary to the Union's assertion, Operating Engineers does not conclude that the Commission "will not defer a failure to provide information charge."  Rather, it recognizes that pending arbitration does not deprive the Commission of jurisdiction to consider statutory claims, should it choose to do so.

In Bremerton Patrolmen's, a police union complained to the Commission that the employer refused to provide information it needed to adequately defend an employee in arbitration proceedings.  Bremerton Patrolmen's, 1998 WL 86012, at *1-*2.  The arbitrator later ruled that he did not have jurisdiction to consider some of the claims and, "as a result," much of the requested information was not relevant to the proceedings.  Bremerton Patrolmen's, 1998 WL 86012, at *2.  At a later hearing on stipulated facts, the Examiner found the employer committed a ULP when it failed or refused to provide the information to the union.  Bremerton Patrolmen's, 1998 WL 86012, at *2.  In a petition for review, the employer urged the Commission to defer to the arbitrator's ruling when considering the union's statutory refusal to provide information claim.  Bremerton

---

[13] In reaching its decision, the Commission recognized that the "NLRB, for its own part, will not defer refusal to provide information [ULP] charges to arbitration."  Operating Eng'rs, 1997 WL 24812, at *5 (citing U.S. Postal Serv., 302 N.L.R.B. 918 (1991)).  But it stops short of concluding the Commission follows this NLRB policy.

Patrolmen's, 1998 WL 86012, at *3.  The Commission declined, concluding the employer violated its disclosure duty because the union requested "relevant information necessary to assess whether the discipline imposed upon [the employee] was proportionate to other discipline within the bargaining unit." Bremerton Patrolmen's, 1998 WL 86012, at *5.

In reaching its decision, the Commission explained that the union needed the materials to defend its employee at arbitration, and it was "not required to wait until an arbitrator ruled on the relevancy of the materials."  Bremerton Patrolmen's, 1998 WL 86012, at *7.  The Commission expressed concern that the "duty to provide information to a party would have little meaning if it were dependent upon the outcome of a grievance" because resolution may be "[t]oo late for the union to properly represent its bargaining unit member(s) during the arbitration process" or provide "a basis for a continuance of the arbitration hearings."  Bremerton Patrolmen's, 1998 WL 86012, at *7.  And "deferral [to arbitration] is ordered only where it can be anticipated that the delay in processing of a[ ] [ULP] case will yield an answer to the question that is of interest to the Commission in resolving the [ULP] case."  Bremerton Patrolmen's, 1998 WL 86012, at *6.

The Commission's decision here does not conflict with Bremerton Patrolmen's.  Unlike the employer and police union in that case, the parties here negotiated language in their CBA governing the duty to provide information.  As a result, delay in processing the Union's statutory claim pending the arbitration process may lead to its resolution.  And since the Union received the calculations

it requested about two months before it filed ULP claims, there is no concern that resolution of the issue at arbitration would prejudice the Union.

Neither Operating Engineers nor Bremerton Patrolmen's stand for the broad proposition that the Commission cannot defer to arbitration contractual disputes related to statutory claims. Rather, both recognize that the Commission has broad discretion to determine when deferral is appropriate. See Operating Eng'rs, 1997 WL 24812, at *4-*5; Bremerton Patrolmen's, 1998 WL 86012, at *6. Here, the Commission's decision to defer was not arbitrary and capricious. Its decision was reasonable because the College asserted a colorable waiver-by-contract defense that may control resolution of the Union's statutory claims. The decision "certainly falls within the not inconsiderable realm of reasonable discretion that an agency possesses to determine how to apply its own past precedents." Boch Imports, Inc. v. Nat'l Labor Relations Bd., 826 F.3d 558, 568-69 (1st Cir. 2016).[14]

---

[14] The Union's third claim on appeal asserts that substantial evidence does not support the Commission's conclusion that the Union's unilateral change claim subsumes its bad faith bargaining claim. But the Commission did not so conclude. Rather, it determined that the two claims arise from similar facts, and the College has a colorable waiver-by-contract defense to each. The Commission concluded the Union's allegations "depend for their resolution on interpretation of the [CBA]." Substantial evidence supports that conclusion.

We affirm the Commission's decision to withhold consideration of the Union's ULP claims until an arbitrator determines whether the claims were waived by contract.

Brummer, J.

WE CONCUR:

Coburn, J.

Smith, J.